FRANK BARKER v. STATE OF NEBRASKA.

FILED JUNE 15, 1905.   No. 14,323.

ERROR to the district court for Lancaster county: EDWARD P. HOLMES, JUDGE. *Reversed.*

*Francis G. Hamer,* for plaintiff in error.

*Norris Brown, Attorney General,* and *W. T. Thompson,* contra.

PER CURIAM.

Error found in the record. Order of dismissal of the district court reversed and cause remanded for further proceedings. Application for suspension of sentence overruled for the reason that jurisdiction of that matter rests with the district court from which these proceedings come. Mandate to issue instanter.

The following opinion was filed December 20, 1905:

1. **Criminal Law: INSANITY: VENUE.** Under the law prior to the act of 1901, the district court of the county of the conviction and sentence of death of a person charged with a capital offense had jurisdiction, independent of statute, to investigate the question of the sanity of such convict; but that jurisdiction has by the statute been transferred to the judge of the district court for the county in which the penitentiary is situated.

22

2. **Convict: INSANITY: PROCEDURE.** Under section 6 of chapter 105, laws 1901, it is the duty of the warden, if a convict confined in the penitentiary under sentence of death appears to be insane, to give notice thereof to a judge of the district court for the county in which the penitentiary is situated, and if such notice is given a jury must be summoned "to inquire into such insanity."

3. ———: ———: **JURISDICTION: DUTY OF JUDGE.** The jurisdiction of the judge of the district court for Lancaster county to inquire as to the sanity of a convict confined in the penitentiary under sentence of death does not depend upon the giving of the notice by the warden. If it is alleged in a proper application to the judge, under oath, that the convict is insane, and that the warden unjustifiably refuses to give the statutory notice, it is the duty of the judge to make such investigation as will satisfy him whether there are such appearances of insanity as will justify summoning a jury to try the question.

4. **Dismissal of Application.** If the judge, upon such investigation, is satisfied that the warden was justified in his refusal to give the notice, and that there are no substantial appearances of insanity, the application will be dismissed.

5. **Trial by Jury.** If upon investigation of the application, the judge finds that the convict appears to be insane, a jury should be impaneled to try the question of insanity.

SEDGWICK, J.

The plaintiff in error was convicted in the district court for Webster county of the crime of murder in the first degree, and sentenced to be executed by hanging. Afterwards, upon proceedings in error brought in this court, the judgment of the district court was affirmed, and the date of the execution was fixed for the 16th day of June, 1905. A few days before the day fixed for the execution the defendant, by his attorney, applied to one of the judges of the district court for Lancaster county for an examination as to the sanity of the defendant. It was alleged in the application that the defendant appeared to be and was insane, with the other necessary allegations of the application, except that the application alleged that the warden of the penitentiary refused to notify the judge of the district court for Lancaster county that the defend-

ant appeared to be insane, and that therefore the application was made by the defendant's attorney. The application was denied upon the sole ground that the court was without jurisdiction to entertain it because of the want of such notice by the warden. This court held that the failure of the warden to give notice to the judge of the district court did not deprive the district court of jurisdiction to investigate the matter, and the order of the district court was reversed. It is necessary that the reasons for this holding should be stated.

In 1901 there was an act of the legislature entitled: "An act for the carrying into effect of the death penalty, and to repeal (certain sections) of the criminal code." The principal object of this act was to provide for executions at the penitentiary instead of in the respective counties as the law before provided. Sections 553 and 554 of the criminal code were substantially reenacted as sections 6 and 7 of the new act and, as reenacted, are as follows:

Section 6. "If any convict under sentence of death shall appear to be insane, the warden shall forthwith give notice thereof to a judge of the district court of the county in which the penitentiary is situated, and shall summon a jury of twelve impartial electors of the county, to inquire into such insanity at a time and place to be fixed by the judge, and shall give immediate notice thereof to the attorney general of the state and the county attorney of the county in which the conviction was had."

Section 7. "The judge, clerk of the court, and attorney general or his deputy, shall attend the inquiry, witnesses may be produced and examined before the jury. The findings shall be in writing and signed by the jury. If it be found that the convict is insane, the judge shall suspend the execution of the convict until the warden shall receive a warrant from the governor of the state directing such execution. The finding of the jury and order of the judge, certified by the judge and clerk, shall be transmitted to the clerk of the district court of the county in which the conviction was had, and shall be by such

clerk entered upon the journal of the court." Laws 1901, ch. 105.

To hold that the warden, by refusing to give the notice mentioned in section 6, could prevent the judge of the district court from investigating as to the sanity of the person under sentence of death, would be to give an arbitrary power to the warden that the statute never intended to give. The convict is under the care of the warden, and if there are appearances of insanity the fact must necessarily come to the attention of the warden. The statute makes it his duty, when there are such appearances, to notify the judge of the district court of that fact. This is to avoid the possible danger that a convict might be executed, while insane, without the fact coming to the notice of the proper judicial authorities, and the requirement is not for the purpose of giving the warden the power of life and death of an insane convict. The matter is left to the discretion of the judge, but he must exercise that discretion, and, when it is brought to his attention by affidavit that there are appearances of insanity, he must take measures to ascertain the reality of those appearances. This jurisdiction and practice is much older than the statutes of our state. In 1 Chitty, Criminal Law, p. *761, it is said: "It has from the earliest periods, been a rule, that though a man be in the full possession of his senses when he commits a capital offense, if he become *non compos* after it, he shall not be indicted; if, after indictment, he shall not be convicted; if, after conviction, he shall not receive judgment; if, after judgment, he shall not be ordered for execution. And this opinion is confirmed by the fact, that a statute was passed in the reign of Henry the Eighth, to allow of execution of persons convicted of high treason, though insane, which was always thought cruel and inhuman, and was repealed in the reign of Philip and Mary. The true reason of this lenity is not that a man, who has become insane, is not a fit object of example, though this might be urged in his favor, but that he is incapable of

saying anything in bar of execution, or assigning any
error in the judgment.    The judge may, if he pleases,
swear a jury to inquire, *ex officio,* whether the prisoner
is really insane, or merely counterfeits; and, if they find
the former, he is bound to reprieve him till the ensuing
session." It was not the purpose of our statute to do
away with this beneficent principle of the common law,
and there can be no doubt that, in the absence of a stat-
ute, and under the old practice, where the convict, after
sentence, was confined in the county jail of the county
of his conviction, it would be the duty of the judge of
the court in which he was convicted, upon a formal repre-
sentation to him under oath that the convict appeared to
be insane, to make investigation of the matter.    The pres-
ent statute requires that the convict, after sentence, be
transferred to the penitentiary, and it also transfers the
jurisdiction from the county of the conviction to the judge
of the court for the county in which the penitentiary is
situated.    The warden is an officer of the state, and his
position and authority are such that, if, in his judgment,
the convict appears to be insane, the district judge can-
not refuse to call a jury to investigate the matter, but,
if the warden neglects to notify the judge that the con-
vict appears to be insane, the judge should, upon proper
information of that fact, and a *prima facie* showing that
the convict is insane, investigate the matter for himself
so far as to determine whether the convict appears to be
insane, and, if he finds that he does so appear, then it
would be his duty to impanel a jury to try the question of
insanity. If, in the absence of the notice by the warden,
the judge, upon investigation, does not find such appear-
ances of insanity in the convict, he would not be required
to call a jury to investigate the matter, but would dismiss
the application.    He cannot, however, refuse to make any
investigation of a proper allegation of insanity solely upon
the ground that the warden has not notified him that
such investigation is necessary.    See also authorities cited,
12 Cyc. p. 772, and note 33.

For these reasons, the order of the district court was

·REVERSED.