**Ricky Ray RECTOR, Appellant,**

v.

**Steve CLARK, Attorney General, State of Arkansas; and, A.L. Lockhart, Director of Arkansas Department of Correction, Appellees.**

No. 90–1204.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 12, 1990.

Decided Jan. 2, 1991.

Rehearing and Rehearing En Banc Denied Feb. 13, 1991.

John Mason Jewell, Little Rock, Ark., for appellant.

Jack Gillean, Little Rock, Ark., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

Petitioner, Ricky Ray Rector, appeals the district court's[1] denial of habeas corpus relief. We affirm.

FACTS

On March 22, 1981, Ricky Ray Rector shot and killed Arthur Criswell and wounded two others at a Conway, Arkansas restaurant. On March 24, 1981, Officer Bob Martin of the Conway Police Department went to the home of petitioner's mother in search of petitioner, as he was the prime suspect in the murder. While the officer was talking with Mrs. Rector, petitioner entered the back of the house, proceeded into the living room, and fatally shot Officer Martin. Moments later petitioner unsuccessfully attempted suicide by shooting himself in the forehead.[2] He was taken to a hospital where his gunshot wound was cleaned and surgically closed.

A jury found petitioner guilty of first degree murder in the Criswell shooting. Prior to the trial, the judge found petitioner competent to stand trial. The Supreme Court of Arkansas affirmed the conviction, *Rector v. State*, 277 Ark. 17, 638 S.W.2d 672 (1982), and petitioner was sentenced to a life term in prison. Next, petitioner was tried for the capital murder of Officer Martin. Prior to this second trial, petitioner was again found to be competent to stand trial. A jury found petitioner guilty of the capital murder of Officer Martin and petitioner was sentenced to death on November 11, 1982. This conviction was affirmed by the Arkansas Supreme Court and the United States Supreme Court denied certiorari. *Rector v. State*, 280 Ark. 385, 659 S.W.2d 168 (1983), *cert. denied*, 466 U.S. 988, 104 S.Ct. 2370, 80 L.Ed.2d 842 (1984).

Petitioner filed a petition for writ of habeas corpus, which was twice amended. Two issues were addressed in the habeas proceeding: (1) whether petitioner's present mental ability should prevent his execution; and (2) whether petitioner's

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. The trauma to petitioner's head resulted in the severance of about three inches of the left frontal pole. This is commonly referred to in medical terms as a frontal lobotomy.

mental ability at his capital murder trial was so diminished that he was unable to receive the requisite assistance of counsel so as to satisfy the sixth amendment. The district court denied habeas relief and petitioner appealed. *See Rector v. Lockhart,* 727 F.Supp. 1285 (E.D.Ark.1990). We now affirm.

## DISCUSSION

█ The execution of an incompetent criminal constitutes cruel and unusual punishment under the eighth amendment. *Ford v. Wainwright,* 477 U.S. 399, 417, 106 S.Ct. 2595, 2605, 91 L.Ed.2d 335 (1986). In addition, Arkansas has enacted a statute making it illegal to execute the insane. *See* Ark.Code Ann. § 16–90–506(d) (1987). Our task is to determine whether the execution of Ricky Ray Rector would be violative of the eighth amendment. We are guided by the Supreme Court's decision in *Ford, supra,* in our selection of an appropriate test by which to assess petitioner's competency.

█ The *Ford* majority found that the eighth amendment prevented the execution of "one whose mental illness prevents him from comprehending the reasons for the penalty or its implications." *Ford, supra,* 477 U.S. at 417, 106 S.Ct. at 2606. Similarly, in his concurring opinion, Justice Powell stated: "I would hold that the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are to suffer it." *Id.* at 422, 106 S.Ct. at 2608. In the Missouri case. of *Smith v. Armontrout,* 857 F.2d 1228, 1230 (8th Cir. 1988), this court cited to *Ford:* "Under [*Ford* ], it would be a violation of the Eighth Amendment to execute someone who lacks capacity to understand the nature and purpose of the punishment about to be imposed on him." Therefore, according to *Ford,* we must examine two factors in assessing petitioner's competency to be executed: (1) whether petitioner understands that he is to be punished by execution; and (2) whether petitioner understands why he is being punished. An examination of the record leads us to believe that petitioner is competent to be executed under these standards.

After petitioner raised this competency-to-be-executed issue, the district court ordered the petitioner to undergo a competency evaluation at the United States Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri. In the final forensic report of August 1989, the examining MCFP doctors stated:

> In the opinions of the undersigned examiners, Mr. Rector satisfies the competency standard contained in *Ford v. Wainwright.* That is, it appears that no mental illness or defect prevents Mr. Rector from being aware of his impending execution and the reason for it.

(Petitioner's exhibit 1, p. 5).

Petitioner, however, argues that the *Ford* test is an incomplete competency test and urges this court to adopt the test set forth in § 7–5.6 of the American Bar Association Criminal Justice Mental Health Standards (ABA standards). The ABA standards incorporate the *Ford* test described above, but add a second dimension. This added dimension involves a determination of whether the convict possesses the ability to inform counsel or the court of any fact which might exist which would make the punishment unjust or unlawful. The doctors who examined petitioner at the MCFP found that although petitioner was competent under the *Ford* test, he was incompetent under the ABA standards:

> In the opinions of the undersigned examiners, Mr. Rector would have considerable difficulty due to his organic deficits in being able to work in a collaborative, cooperative effort with an attorney. In our opinions it appears that he would not be able to recognize or understand facts which might be related to his case which might make his punishment unjust or unlawful.

(Petitioner's exhibit 1, p. 5–6). Apparently this difference in opinion under the ABA standards is due to the added ability-to-assist-counsel requirement, which is not required under the *Ford* test.

We agree with the district court that, "[w]hile the [ABA standards] are interesting, they have no legal effect." *Rector, supra,* 727 F.Supp. at 1292. We hold that

the district court was correct in rejecting the ABA standards and in selecting the *Ford* test as the appropriate measure of petitioner's competency. Furthermore, after reviewing the record, we find that the district court's application of the *Ford* test to the present facts was not erroneous. Therefore, we affirm the district court's finding that petitioner is competent to be executed.

■ Petitioner also urges this court to reverse the finding of the district court that petitioner was competent to stand trial in 1982 for the capital murder of Officer Martin. Petitioner does not dispute his competency at the time he actually shot Officer Martin, but rather claims that the self-inflicted gunshot wound and resulting head injury caused him to become incompetent at the time of the capital murder trial in 1982. Petitioner raised this competency issue before the state trial court at a competency hearing at which two psychologists testified on behalf of petitioner, while two psychologists and two psychiatrists from the State Hospital testified for the State. The testimony was in conflict as to whether petitioner was competent to stand trial.

The trial court found petitioner competent to stand trial and, on appeal, the Arkansas Supreme Court affirmed, *Rector v. State, supra.* The district court reviewed these state court findings as well as new testimony presented by petitioner. At the federal habeas hearing, petitioner called three lay witnesses, two of his prior attorneys and his sister, to testify as to his competency. The attorneys' testimony focused on petitioner's "passivity and unemotional affect along with his amnesia." 727 F.Supp. at 1291. Petitioner's sister testified that petitioner had undergone a personality change following the self-inflicted gunshot wound. It should be noted that none of the above three witnesses have received any formal training in psychology or psychiatry. We agree with the district court that: "When the testimony of these three witnesses is juxtaposed against the testimony of the four highly qualified experts who testified at prior to [sic] Rector's

1982 state trial, [we] are not impressed." *Id.*

We also recognize that petitioner's competency to stand trial is a factual issue for the state court to decide. Finding no basis to question the state court's findings, those findings are presumed to be correct. *See Wright v. Minnesota,* 833 F.2d 746, 748–49 (8th Cir.1987), *cert. denied,* 485 U.S. 1011, 108 S.Ct. 1481, 99 L.Ed.2d 709 (1988); *Beans v. Black,* 757 F.2d 933, 935 (8th Cir.), *cert. denied,* 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985); 28 U.S.C. § 2254(d).

■ Finally, petitioner claims that the final report of the MCFP supports his contention that he was not competent to stand trial. Petitioner seems to argue that because he failed to meet the ability-to-assist-counsel requirement of the ABA standards when evaluated at the MCFP in 1989 for his competency to be executed, that somehow this evaluation ought to reflect on petitioner's competency to stand trial for the capital murder in 1982. The district court properly rejected this argument. The doctors completing the 1989 MCFP report testified that they were not making any kind of comment or suggestion regarding petitioner's competency to stand trial when he was tried for capital murder in 1982. Clearly, this testimony cannot be used to prove or disprove petitioner's competency back in 1982.

CONCLUSION

For the foregoing reasons, we affirm.