No. 90–7755.  RECTOR *v.* BRYANT, ATTORNEY GENERAL OF ARKANSAS, ET AL.  C. A. 8th Cir.  Certiorari denied.

JUSTICE MARSHALL, dissenting.

In *Ford* v. *Wainwright,* 477 U. S. 399 (1986), this Court recognized that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane." *Id.,* at 409–410.  The full Court, however, did not attempt a comprehensive definition of insanity or incompetence in this setting.  See *id.,* at 407–408, 409–410; *id.,* at 418 (Powell, J., concurring in part and concurring in the judgment).  This petition presents the question whether a prisoner whose mental incapacity renders him unable to recognize or communicate facts that would make his sentence unlawful or unjust is nonetheless competent to be executed. Because *Ford* leaves this question unanswered, and because this is an important and recurring issue in the administration of the death penalty, I would grant the petition.

I

After shooting and killing a police officer sent to investigate petitioner's involvement in another homicide, petitioner attempted to end his own life by shooting himself in the head.  The gunshot did not kill petitioner.  However, it did sever a three-inch section

of petitioner's brain, resulting in a frontal lobotomy. See 923 F. 2d 570, 571, and n. 2 (CA8 1991). The trial court rejected petitioner's claim that he was incompetent to stand trial for murder of the police officer. Petitioner's conviction and sentence of death were affirmed on appeal.

Petitioner thereafter filed a petition for a writ of habeas corpus in federal district court, arguing that his deteriorated mental condition rendered him incompetent to be executed. The District Court ordered a mental evaluation of petitioner to be conducted by the United States Medical Center for Federal Prisoners. The examiners reached two conclusions. First, the examiners determined "that no mental illness or defect prevents [petitioner] from being aware of his impending execution and the reason for it." *Id.*, at 572. Second, applying the competency standard adopted by the American Bar Association in its Criminal Justice Mental Health Standards,[1] the examiners reported that

"[petitioner] would have considerable difficulty due to his organic deficits in being able to work in a collaborative, cooperative effort with an attorney. In our opinions it appears that *he would not be able to recognize or understand facts which might be related to his case which might make his punishment unjust or unlawful.*" *Ibid.* (emphasis added).

The District Court concluded that, for purposes of *Ford* v. *Wainwright, supra,* petitioner's competency to be executed turned solely on his appreciation of the nature of his punishment. Consequently, the court denied the writ. See 727 F. Supp. 1285, 1292 (ED Ark. 1990).

Petitioner appealed this determination to the Court of Appeals for the Eighth Circuit. Like the District Court, the Court of Appeals concluded that petitioner's inability to recognize or communi-

---

[1] ABA Standard 7–5.6(b) provides:

"A convict is incompetent to be executed if, as a result of mental illness or mental retardation, the convict cannot understand the nature of the pending proceedings, what he or she was tried for, the reason for the punishment, or the nature of the punishment. A convict is also incompetent if, as a result of mental illness or mental retardation, *the convict lacks sufficient capacity to recognize or understand any fact which might exist which would make the punishment unjust or unlawful, or lacks the ability to convey such information to counsel or to the court.*" ABA Criminal Justice Mental Health Standards 7–5.6(b) (1989) (emphasis added).

cate facts that might make his punishment unlawful or unjust was of no legal consequence. See 923 F. 2d, at 572–573. Purporting to draw on the majority opinion in *Ford* and on Justice Powell's concurring opinion, the Court of Appeals concluded that the only considerations relevant to petitioner's competency were "(1) whether petitioner understands *that* he is to be punished by execution; and (2) whether petitioner understands *why* he is being punished." *Id.*, at 572 (emphasis added). Because the medical examiners had determined that petitioner was competent to be executed by these criteria, the Court of Appeals affirmed the District Court's denial of habeas relief.

The lower courts clearly erred in viewing *Ford* as settling the issue whether a prisoner can be deemed competent to be executed notwithstanding his inability to recognize or communicate facts showing his sentence to be unlawful or unjust. Although the Court in *Ford* did emphasize the injustice "of executing a person who has no comprehension of why he has been singled out and stripped of his fundamental right to life," 477 U. S., at 409, the Court stressed that this was just one of many conditions that were treated as rendering a prisoner incompetent (or insane) at common law, see *id.*, at 407–408, 409–410. Indeed, the Court quoted with approval Blackstone's discussion of this topic, which clearly treats as a bar to execution a prisoner's inability to recognize grounds for avoiding the sentence:

> " '[I]f, after judgment, [a capital prisoner] becomes of nonsane memory, execution shall be stayed: for peradventure, says the humanity of the English law, *had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution.*' " *Id.*, at 407 (emphasis added), quoting 4 W. Blackstone, Commentaries *24–*25 (1769).

It is true, as the Court of Appeals noted, that Justice Powell addressed and rejected this definition of incompetence in his concurring opinion. See 477 U. S., at 419–421. But even he recognized that the full Court left the issue open. See *id.*, at 418 (noting that Court does not resolve "the meaning of insanity in this context").

In my view, a strong argument can be made that Justice Powell's answer to this open question is the wrong one. As we have emphasized, the Eighth Amendment prohibits any punishment considered cruel and unusual at common law as well as any pun-

ishment contrary to "the 'evolving standards of decency that mark the progress of a maturing society.'" *Penry* v. *Lynaugh*, 492 U. S. 302, 330–331 (1989), quoting *Trop* v. *Dulles*, 356 U. S. 86, 101 (1958) (plurality opinion); accord, *Stanford* v. *Kentucky*, 492 U. S. 361, 368–369 (1989); *Ford* v. *Wainwright, supra,* at 405–406. The common law's hostility to putting a man to death under such circumstances is documented not only by Blackstone, see 4 W. Blackstone, *supra,* *24–*25, *388–*389, but also by other commentators on English common law, see 1 M. Hale, Pleas of the Crown 35 (1736), and by numerous early American decisions, see *State* v. *Helm,* 69 Ark. 167, 171–173, 61 S. W. 915, 916–917 (1901); *People* v. *Geary,* 298 Ill. 236, 245, 131 N. E. 652, 655–656 (1921); *Barker* v. *State,* 75 Neb. 289, 292–293, 106 N. W. 450, 451 (1905); *In re Smith,* 25 N. M. 48, 59–60, 176 Pac. 819, 823 (1918); *Freeman* v. *People,* 4 Denio (N. Y.) 9, 20, 47 Am. Dec. 216, 219–220 (1847). See generally *Solesbee* v. *Balkcom,* 339 U. S. 9, 20, n. 3 (1950) (Frankfurter, J., dissenting); 1 J. Chitty, The Criminal Law *761 (5th ed. 1847); 1 W. Russell, Crimes and Misdemeanors 14 (8th ed. 1857); L. Shelford, The Law Concerning Lunatics, Idiots and Persons of Unsound Mind 295 (1833); Annot., 3 A. L. R. 94, 97–99 (1919).[2] Objective indicia of contemporary mores likewise

---

[2] Justice Powell did not dispute the established status of this definition of incompetence at common law. See *Ford* v. *Wainwright,* 477 U. S. 399, 419 (1986) (concurring in part and concurring in the judgment). Instead, he reasoned that the advent of increased opportunities for direct and collateral review of criminal convictions had so reduced the possibility of undiscovered error as to render this conception obsolete. See *id.,* at 420–421. This view strikes me not only as inconsistent with the established principle "that the Eighth Amendment's ban on cruel and unusual punishment embraces, *at a minimum,* those modes or acts of punishment that had been considered cruel and unusual at the time that the Bill of Rights was adopted," *id.,* at 405 (emphasis added); accord, *Penry* v. *Lynaugh,* 492 U. S. 302, 330 (1989), but also as somewhat question begging. For if a prisoner is incapable of recognizing or communicating facts that would facilitate collateral review, there is no reason to assume that collateral review in his case has rooted out all trial errors. In addition, Justice Powell's argument seems to miss at least half the point of the common law conception of incompetence. This definition focuses not only on the prisoner's capacity to recognize and communicate facts showing that his sentence is *unlawful,* but also on his capacity to recognize and communicate facts showing that his sentence is *unjust.* Absent this capacity, the prisoner is unable to participate in efforts to seek executive clemency, see, *e. g.,* Mo. Ann. Stat. § 552.060.1 (Supp. 1991), the appropriateness of which will not necessarily be disclosed in the course of direct or collateral review of the prison-

condemn execution of a prisoner afflicted with a "mental disease or defect [depriving him of the] capacity to understand . . . matters in extenuation, arguments for executive clemency or reasons why the sentence should not be carried out." Mo. Ann. Stat. § 552.060.1 (Supp. 1991); accord, Miss. Code Ann. § 99–19–57(2)(b) (Supp. 1990); N. C. Gen. Stat. § 15A–1001 (1990); ABA Criminal Justice Mental Health Standards 7–5.6(b) (1989).

The issue in this case is not only unsettled, but is also recurring and important. The stark realities are that many death row inmates were afflicted with serious mental impairments before they committed their crimes and that many more develop such impairments during the excruciating interval between sentencing and execution. See Lewis, Pincus, Feldman, Jackson & Bard, Psychiatric, Neurological, and Psychoeducational Characteristics of 15 Death Row Inmates in the United States, 143 Am. J. Psychiatry 838, 840–841 (1986); Johnson, Under Sentence of Death: The Psychology of Death Row Confinement, 5 Law & Psychology Rev. 141, 176–181 (1979); Gallemore & Panton, Inmate Responses to Lengthy Death Row Confinement, 129 Am. J. Psychiatry 167, 168, 169 (1972). Unavoidably, then, the question whether such persons can be put to death once the deterioration of their faculties has rendered them unable even to appeal to the law or the compassion of the society that has condemned them is central to the administration of the death penalty in this Nation. I would therefore grant the petition for certiorari in order to resolve *now* the questions left unanswered by our decision in *Ford* v. *Wainwright*.

## II

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition and vacate the death sentence even if I did not view the issue in this case as being independently worthy of this Court's plenary review.

---

er's conviction. Ultimately, then, the common law conception of incompetence embodies the principle that it is inhumane to put a man to death when he has been rendered incapable of appealing to the mercy of the society that has condemned him.