**Percy Levar WALTON, Petitioner,**

v.

**Gene M. JOHNSON, Respondent.**

**No. CIV.A. 7:03CV0347.**

United States District Court,
W.D. Virginia.
Roanoke Division.

March 4, 2004.

Jennifer L. Givens, Charlottesville, VA, for Petitioner.

Robert Q. Harris, Office of Attorney General, Richmond, VA, for Respondent.

### MEMORANDUM OPINION

WILSON, Chief Judge.

Percy Levar Walton appears before the court on an authorized successive petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Walton challenges his execution sentence, claiming that he is not competent to be executed. After two evidentiary hearings on the issue and testimony from a neutral, court-appointed expert, the court finds that Walton both understands that he is to be executed and that his execution is punishment for his conviction for murder. Consequently, Walton's petition is dismissed.

### I.

The facts of this case are well-documented, both in this court's prior opinions and in the state court proceedings, but essentially Walton pled guilty to three counts of capital murder, and the Circuit Count for the City of Danville, Virginia imposed three death sentences. Walton filed his first habeas corpus petition with this court on March 24, 2000, alleging among other claims that he was not competent to be executed, but the court declined to hear that claim because his execution was not yet imminent. With his execution imminent, Walton filed an authorized successive petition for a writ of habeas corpus on June 2, 2003, reasserting his claim.[1] Since the Commonwealth of Virginia would not consider his claim and since the state failed to develop a record on the issue, the court stayed Walton's pending execution and granted an evidentiary hearing on the issue of whether Walton was competent to be executed.

On July 28, 2003, the court held the first of two evidentiary hearings. During the hearing, Walton presented six witnesses. Calvin Tynes, a correctional officer at Sussex I State Prison ("Sussex I"), Donnell McIntyre, a counselor at Sussex I, and Sherri Hopkins, a psychologist for the Prison Health Services, all testified about Walton's bizarre behavior. They indicated that Walton was very dirty, unkempt, and refused to bathe regularly. Each witness also noted that Walton's behavior or appearance did not change when he received his execution notice.

---

1. Walton also raised a new claim that his sentence of death amounted to cruel and unusual punishment because he is mentally retarded. The court, however, rejected Walton's mental retardation claim. *Walton v. Johnson,* 269 F.Supp.2d 692 (W.D.Va.2003).

Walton also presented three mental health experts: Dr. Patricia General, a psychiatrist at Physicians Health Services; Dr. Anand Pandurangi, a professor of psychiatry and director of the schizophrenia program at the Medical College of Virginia; and Dr. Ruben Gur, a Ph.D. in clinical psychology. All three witnesses had examined Walton on several occasions, and all three testified that Walton appeared psychotic. Dr. General testified that Walton appeared to hear voices on occasion, and both Dr. Pandurangi and Dr. Gur determined that he most likely suffered from schizophrenia. Further, Dr. Pandurangi opined that Walton could not understand, "[i]n any sustained sort of way," the nature of his court proceedings or the ramifications of his execution (Tr. at 161), and Dr. Gur concurred with this opinion. (Tr. at 235). Dr. General, however, opined that Walton understood he was to be put to death because "some people had told him ... that he had killed some people." (Tr. at 91–92, 124).

The respondent presented the testimony of two additional witnesses: Allen Glasgow, a rehabilitation counselor at Greensville Correctional Center ("Greensville"), and Dr. Alan Arikian, a psychiatrist at Prison Health Services. Glasgow, who meets with prisoners shortly before their scheduled execution when they go to the death chamber at Greensville, testified that Walton communicated well and clearly when he arrived. At Greensville, prisoners must fill out a visitors list in order to receive guests, and, as Glasgow indicated, Walton clearly stated, "I would like to put my mom on the list," and he listed several other people without any prompting by Glasgow. (Tr. at 317–20). Glasgow also testified that he explained to Walton that Walton could designate a person responsible for disposing of his remains, and Walton, who responded "[y]es, I understand," chose his mother. (Tr. at 322–23).

Dr. Arikian testified about several statements Walton made. After questioning Walton about his disruptive behavior, Walton told Dr. Arikian, "I just enjoy playing around with folks. I enjoy messing with them." (Tr. at 333). Dr. Arikian also testified that Walton made several other statements of a "mentally limited, streetwise predator." Walton indicated that "[e]xecution is the same as murder" (Tr. at 336), that "old people were kind of useless and expendable if they had stuff you wanted" (Tr. at 337), and that "[h]aving a gun and using it makes you powerful." (Tr. at 336). Dr. Aikian also quoted Walton as saying, "I'm here because I shot four people in the head" (Tr. at 354), which incidentally was incorrect, and he opined that Walton understood that he was to be executed because of his murder convictions. (Tr. at 355).

In addition to Walton's and the respondent's witnesses, the court called Walton as a witness. During his testimony, Walton often responded, "I don't know—I don't even know" to even the most basic questions, a response Walton frequently gave to the experts during their interviews. After hearing Walton's testimony and the divergent testimonies and opinions of the witnesses, the court decided to appoint a neutral expert to examine Walton and testify as to his competency to be executed. After the parties refused to agree on a particular expert, the court directed each party to select one expert, and the two experts would collaborate and chose a third, neutral expert to examine Walton and testify about Walton's competency. Following this procedure, the parties' experts recommended Dr. Mark Mills, an acknowledged, qualified forensic psychiatrist, and the court appointed him as the court's expert. Shortly after his appointment, Robert Harris, a Senior Assistant Attorney General for the Commonwealth of Virginia, wrote the court, objected the

Dr. Mills' appointment, noted a prior affiliation between Dr. Mills and Walton's counsel, and stated: "I have serious reservations about whether (Dr. Mills) satisfies the Court's expectation of an expert without a pre-existing agenda." Harris's concerns brought a swift response from Jennifer Givens, Walton's counsel, who also wrote the court. Givens acknowledged Dr. Mills' affiliation in a prior case, but stated that his "involvement in this prior case only confirms his objectivity."

On March 3, 2004, the court held the second evidentiary hearing on Walton's competency to be executed. During the hearing, Dr. Mills, a Stanford trained forensic psychiatrist who has held faculty positions at Stanford, Harvard, UCLA, and Columbia, testified that he had reviewed the material supplied by both parties and had met with Walton. Dr. Mills opined that Walton suffered from a significant psychiatric disorder, most likely schizophrenia, that he had limited cognitive ability, and that he was not malingering. Dr. Mills indicated Walton had a deep set of religious beliefs and that after his execution, Walton believed that he would go to heaven and come back to see his family. Dr. Mills also testified that Walton volunteered, without prompting, that he was in jail for murdering three people and that he was to be executed. Walton, Dr. Mills testified, expressed preferences about dying, stating that he would rather live in prison than die, that he prefers to die by electrocution, and that he would not want to be "beaten by a club." Dr. Mills also addressed Walton's repetitive statements-"I don't know-I don't even know." Dr. Mills opined that Walton's statements do not mean that he actually does not know something, but that they are often the "easy answer." Finally, Dr. Mills noted that Walton recognized that his execution was "the end" or "an end," and Dr. Mills concluded that Walton knew that he was in prison for murdering three

people and that he was being executed for those convictions.

In addition to Dr. Mills' testimony, Walton again offered the testimony of Dr. Pandurangi, whose testimony was consistent with his testimony at the July 28 evidentiary hearing. He indicated that Walton often used the statement "I don't know" as a defense mechanism and that it is likely a mannerism. He also indicated that although Walton was not overtly mentally retarded, he had to be reminded that he was guilty of murder and was sentenced to death. Finally, Dr. Pandurangi opined that Walton probably does not understand the implications of his death sentence, thinks of death as a temporary state, and is unable to prepare for his death.

■ After hearing the evidence presented in two evidentiary hearings and considering the testimony of the expert witnesses, the court, by a preponderance of the evidence, finds the following facts.

1. Dr. Mills is an imminently qualified forensic psychiatrist, who offered persuasive, · independent, well-reasoned, and neutral opinions regarding Walton's competency to be executed.

2. Walton is suffering from a psychotic disorder, most likely schizophrenia.

3. Walton understands that he is in prison and has received an execution sentence for murdering three individuals.

4. Walton understands that to be executed means he will die.

## II.

■ In *Ford v. Wainwright*, 477 U.S. 399, 409–410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), the Supreme Court of the United States held that the Eighth Amendment prohibits execution of a defendant who is incompetent. The Court did not

define incompetence in the majority opinion, but instead left to the states "the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences." *Id.* at 416, 106 S.Ct. 2595. To date, Virginia has yet to establish a statutory standard for incompetence at the time of execution and the Fourth Circuit has not addressed the issue. However, the other jurisdictions have adopted the standard first expressed in Justice Powell's concurring opinion in *Ford:* "the Eighth Amendment forbids the execution only of those who are unaware of the punishment they are about to suffer and why they are about to suffer it." *Id.* at 422, 106 S.Ct. 2595 (Powell, J., concurring). *See Rector v. Clark,* 923 F.2d 570, 572 (8th Cir.1991) (holding that in assessing a prisoner's competency to be executed, the court must examine two factors: (1) "whether the petitioner understands that he is to be punished by execution"; and (2) "whether the petitioner understands why he is being punished"); and *Barnard v. Collins,* 13 F.3d 871, 877 (5th Cir.1994) (adopting the standard enunciated by Justice Powell, requiring a petitioner to know that he is going to be executed and why he is going to be executed). This court finds this standard appropriate and follows it.

In this case, Walton satisfies the standard. Although Walton is clearly suffering from a mental disorder, the standard suggested by Justice Powell and followed by this court does not prevent a state from executing a convicted defendant merely because he suffers from mental illness. Rather, the standard makes a simple and limited inquiry, and here, it is more likely than not that Walton both understands that he is to be punished by execution and that he is being executed because of his conviction for murdering three people.[2] In reaching this conclusion, the court finds the testimony and opinions of Dr. Mills persuasive. In that testimony, Dr. Mills noted that Walton recognized that his execution was "the end" or "an end." Further, Walton volunteered information, without prompting from Dr. Mills, that he is in jail for murdering three people and that he is to be executed. Walton also expressed his desire to be electrocuted. Finally, Dr. Mills opined that Walton satisfied the standard for competency to be executed, and the court finds that Dr. Mills' conclusion is supported by the evidence. Therefore, this court finds by a preponderance of the evidence, that Walton understands that he is sentenced to die by execution and that he is to be executed for murdering three people.

### III.

For the reasons stated, the court dismisses Walton's petition for a writ of habeas corpus.

### FINAL ORDER

In accordance with the Memorandum Opinion entered this day, it is hereby **ORDERED** and **ADJUDGED** that the Walton's petition for a writ of habeas corpus is **DENIED**. This case is **STRICKEN** from the active docket of the court.

Walton is advised that he may appeal the dismissal of his claims pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the entry of this Order, or within such extend-

---

2. The court finds in unnecessary to determine which party carries the burden of proof on Walton's competency to be executed. Regardless of who may have the burden, the court finds, after reviewing all the evidence and the opinions of all the experts, that by a preponderance of the evidence Walton satisfies the competency standard followed by the court.

ed period as the court may grant pursuant to Rule 4(a)(5).