**James Michael DAVIS, Appellant,**

v.

**Donald WYRICK, Appellee.**

**No. 84–1636.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1985.

Decided June 28, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 7, 1985.

Charles S. Elbert, St. Louis, Mo., for appellant.

George Cox, Jefferson City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HENLEY, Senior Circuit Judge.

James Michael Davis appeals from the district court's denial of his petition for habeas corpus. In support of his petition,

Davis contends that (1) he was incompetent at the time of his trial; (2) the district court erred in refusing to conduct an evidentiary hearing on the competency issue; (3) he was deprived of due process by certain remarks made by the prosecutor at trial; (4) the evidence is insufficient to support his capital murder conviction; (5) the trial court's bias deprived him of a fair trial; and (6) his conviction must be reversed because three prospective jurors were excused for cause because they held absolute scruples against the death penalty. We hold that Davis is not entitled to habeas relief and affirm the judgment of the district court.[1]

In October of 1977 St. Charles Police Officers Leslie Simpson and Gary Stroud responded to a report that a man had a gun outside of a tavern. As Officer Simpson arrived on the scene, he saw Davis run in front of the tavern, throw a gun into a white 1959 Ford, and attempt to drive away. Although Simpson tried to block Davis' car, Davis eluded Simpson and proceeded west on Morgan Street. Officer Stroud then arrived and gave pursuit in his car while Officer Simpson checked to see whether anyone had been injured in the tavern.

Davis made it as far as the next block where he turned left and became hung up on some bushes. Officer Stroud pulled his patrol car behind Davis' car to prevent Davis from extricating his car from the bushes. Davis then got out of his vehicle, aimed a shotgun at Stroud, and fired three shots in rapid succession through the windshield. Officer Stroud later died as a result of wounds to his heart and lungs.

As Davis returned to his car, Simpson arrived and fired six shots toward Davis' vehicle. Davis managed to get his car off the bushes, however, and escaped. Davis was later apprehended after he was found hiding in a flower bed about ten blocks from the scene of the homicide.[2] He struggled with the arresting officers, threatened to kill them, and had to be restrained. In both oral and written statements taken after his arrest, Davis admitted killing Stroud.[3]

Davis' defense at trial was not guilty by reason of mental disease or defect. He produced evidence that he was a long term alcoholic and had been in several automobile accidents. There was testimony that Davis had been taking several prescription drugs, including Valium and Librium. He suffered headaches and had at least one seizure for which he was hospitalized.

A competency hearing was held prior to trial. Dr. Joseph Turner stated that Davis had a "definite abnormality" or tumor on one side of his brain. His report stated that Davis had a "mental defect," which, along with his alcoholism and prior head injuries sustained in car accidents, affected his behavior to such an extent that it prevented his knowing right from wrong. Dr. Henry Bratkowski generally concurred in these findings and stated Davis' problems were neurologic rather than psychiatric and that Davis was not suffering from any psychosis.[4] Both experts stated that they believed Davis had no recollection of Officer Stroud's murder. Dr. Bratkowski admitted, however, that his amnesia diagnosis was based solely on Davis' statement that he could not remember the homicide.

Dr. David Sherman testified for the state at both the competency hearing and at trial. Dr. Sherman stated that he thought the mass on Davis' brain was a scar or vascular malformation rather than a tu-

---

1. The Honorable John F. Nangle, Chief Judge, United States District Court, Eastern District of Missouri.

2. Davis was forced to flee on foot after he crashed his car into a utility pole.

3. The state produced witnesses who testified that Davis was upset prior to the shooting because he had received numerous traffic cita-

tions. Davis apparently told the witnesses that the police "would get theirs" and that he was going to kill the next officer who followed him. When Officer Paul Orf asked Davis why he had shot Officer Stroud, Davis replied that Stroud had "turned his reds on."

4. Dr. Bratkowski also testified for the defense at trial.

mor. He opined that Davis was not suffering from any mental disease or defect at the time of the killing.

On the specific issue of competency to stand trial, all three doctors were in agreement that Davis was competent to understand the proceedings and assist in his own defense. Dr. Bratkowski's only reservation was that the proceedings might have to be stayed if Davis became temporarily incapacitated because of headaches or seizures.

On the basis of this testimony, the state trial court found Davis competent to stand trial.[5] Davis' interlocutory appeals from this ruling were denied. Davis was convicted of capital murder and sentenced to life imprisonment without possibility of parole for a period of fifty years. The Supreme Court of Missouri affirmed. *State v. Davis*, 653 S.W.2d 167 (Mo. banc 1983).

Davis then filed the present habeas petition. The matter was referred to a magistrate[6] who recommended that the petition be denied. The district court adopted the magistrate's report and recommendation. This appeal followed.

## COMPETENCY TO STAND TRIAL.

Davis argues that because he had amnesia with respect to the events surrounding the homicide, and because of his "mental defect" in the form of an alleged brain tumor, he lacked a rational and factual understanding of the proceedings against him and was unable to assist in his defense.

■ It is a violation of due process to convict a person while he is legally incompetent. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Speedy v. Wyrick*, 748 F.2d 481, 484 (8th Cir.1984). The test for determining whether an accused is competent to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as

well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975).

■ We note that "[s]ince competency to stand trial is a factual issue, we must presume the state court's findings to be correct unless they can be faulted for one of the reasons listed in 28 U.S.C. § 2254(d)." *Beans v. Black*, 757 F.2d 933, 935 (8th Cir.1985); *Maggio v. Fulford*, 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983) (per curiam). Davis was given a hearing and found competent by both the state trial and appellate courts.

Davis asserts that his state competency hearing was not full and fair, and thus the presumption of correctness is inapplicable. *See* 28 U.S.C. § 2254(d)(6). He contends that the hearing was held before a different judge than the one who actually made the competency finding and that the hearing was held ten months prior to trial. He urges us to adopt a requirement of a post-trial competency finding. *See Wilson v. United States*, 391 F.2d 460 (D.C.Cir.1968).

■ Davis' arguments are unpersuasive. The hearing which was held in the state court was more than adequate to develop the facts relating to Davis' competency. Three doctors gave testimony and submitted reports on the issue. Davis' alleged amnesia, the effects of his alcoholism, prior head injuries, and the mass on his brain were all fully explored. Moreover, the record reflects that the state trial judge did not blindly accept the finding of the judge who conducted the competency hearing. He examined the record and simply came to a similar conclusion. As for the ten month time lag, there is no indication that there was any new evidence to be presented on the competency issue at the time of trial. Finally, while a post-trial competency finding may be desirable, it is

---

**5.** The competency hearing was held some ten months prior to trial before another judge. The trial court based its ruling upon the record of the prior hearing.

**6.** The Honorable William S. Bahn, United States Magistrate, Eastern District of Missouri.

doubtful that such is required by the due process clause.[7] In short, Davis' competency hearing was full, fair and adequate, and we are constrained to accord deference to the state court's findings.

■ In any event, there is ample evidence supporting a finding of Davis' competency to stand trial. As noted, while there was some dispute between the experts as to whether Davis was able to appreciate the wrongfulness of his act at the time of the killing, all three psychiatrists/neurologists were in agreement that, despite his claim of amnesia, Davis was competent to stand trial. Amnesia alone is not a bar to the prosecution of an otherwise competent defendant. *E.g., Holmes v. King,* 709 F.2d 965, 968 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 428, 78 L.Ed.2d 362 (1983); *United States v. Alley,* 661 F.2d 718, 722 (8th Cir.1981); *United States ex rel. Parson v. Anderson,* 481 F.2d 94, 96 (3d Cir.), *cert. denied,* 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1973); *Dhaemers v. State,* 456 F.2d 1291 (8th Cir. 1972) (per curiam). There is little evidence that Davis' alleged amnesia hindered his ability to understand the proceedings or assist in his defense.[8]

■ Relatedly, Davis contends that the district court should have held an evidentiary hearing on the competency issue. However, we have already indicated that Davis received a full and fair hearing in the state court. There was no need for a federal district court to hold a second hearing.[9] *Stewart v. Missouri Bd. of Probation,* 712 F.2d 378 (8th Cir.1983) (per curiam); *Mitchell v. Wyrick,* 698 F.2d 940, 944 (8th Cir.), *cert. denied,* 462 U.S. 1135, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983). Moreover, "[a] habeas corpus petition may be properly dismissed without a hearing where facts are not in dispute or where the dispute can be resolved on the basis of the record." *Riley v. Lockhart,* 726 F.2d 421, 423 (8th Cir.1984) (per curiam); *Hill v. Lockhart,* 731 F.2d 568, 572–73 (8th Cir. 1984). It was not an abuse of discretion for the district court to conclude that it could resolve the present dispute on the basis of the record.

## IMPROPER PROSECUTORIAL COMMENTS.

Davis next contends that he was deprived of a fair trial by virtue of certain comments made by the prosecutor. During a bench conference concerning an objection, the prosecutor stated that if Davis were found not to have a mental disease or defect at the time of trial, he would not be committed to a mental institution, thereby implying that Davis would be set free if he was found not guilty by reason of mental disease or defect.

■ This comment might be disturbing were it not for the fact that the state trial court specifically found that the jury did not hear the remark. The jury was located some fifteen to twenty feet from the bench. The Missouri Supreme Court agreed with the state trial court's finding. *State v. Davis,* 653 S.W.2d at 176. The state trial court was in a much better position to determine whether the jury heard the comment and Davis has offered no evidence which would cast doubt upon this finding.

---

**7.** We need not directly decide whether a post-trial competency hearing and finding are constitutionally required, however, for even assuming such a rule is required by due process, Davis has not shown any prejudice from the lack of such a procedure. It is also unclear whether Davis requested the trial court to make a competency finding following trial.

**8.** The evidence of guilt was overwhelming and included eyewitness accounts of the homicide and Davis' admissions of guilt. It is difficult to perceive how the amnesia could have impaired Davis' defense since the facts surrounding the killing were virtually undisputed. "There is no suggestion as to the existence of a tenable defense which has been locked in by the amnesia." *United States v. Borum,* 464 F.2d 896, 900 (10th Cir.1972). We also fail to see how his defense of insanity was impaired by the alleged amnesia.

**9.** It is for precisely this reason that Davis' reliance on *Speedy v. Wyrick,* 702 F.2d 723 (8th Cir.1983), *opinion after remand,* 748 F.2d 481 (8th Cir.1984), is misplaced. In *Speedy,* no competency hearing was held in state court.

In these circumstances, we must presume this factual determination is correct. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Davis also contends that the prosecutor's closing argument was improper. During the rebuttal portion of his argument, the prosecutor stated:

> This defense of mental disease is generally only—you see it in two cases; one when the charge is very serious such as Capital Murder, and the other time it's used is when there's no other defense.

After defense counsel's objection was overruled, the prosecutor continued:

> That's the only time it's used. You should find this Defendant guilty because this mental disease defense doesn't work. First, there's no mental disease, and second, secondly, there's no connection between any alleged mental disease [and] the acts that night. . . .

Davis asserts that the remark that the mental disease defense "doesn't work" communicated to the jury that such defenses are almost always contrived.

 The federal courts may intervene in state judicial processes "only to correct wrongs of a constitutional dimension." *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983) (per curiam); *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). Improper closing argument made by a prosecutor may not support habeas relief unless it fatally infected the entire trial and deprived the petitioner of fundamental fairness. *Maggitt v. Wyrick,* 533 F.2d 383, 385 (8th Cir.), *cert. denied,* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976); *Donnelly v. DeChristoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431 (1974). *See Ellis v. Black,* 732 F.2d 650, 657 (8th Cir.1984). This standard

of review is consequently a narrow one. *Moore v. Wyrick,* 760 F.2d 884, 886 (8th Cir.1985) (per curiam).

 While the quoted remarks were at least questionable, we do not believe that they deprived Davis of a fundamentally fair trial. We must consider the probable effect that the remarks had on the jury's ability to fairly judge the evidence. *United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1985).[10] Here, we cannot accept Davis' interpretation that the comments conveyed to the jury the prosecutor's belief that the mental disease or defect defense "doesn't work" in all circumstances. Taken in context, a more reasonable interpretation of the remarks is that the defense "doesn't work" in the circumstances of Davis' case. Immediately after saying that this type of defense "doesn't work," the prosecutor went on to say that there was no evidence that Davis suffered from any mental disease which affected his behavior at the time of the homicide. Finally, the alleged improper statements were isolated and the jury was instructed that the arguments of counsel are not evidence.

In sum, while we do not condone the prosecutor's argument, we are unable to conclude that the comments so infected Davis' trial that he was deprived of due process. In view of the overwhelming evidence of guilt, any error which was committed was not of such a constitutional magnitude that reversal is required.

## SUFFICIENCY OF THE EVIDENCE.

 Davis also contends that there was insufficient evidence of deliberation and premeditation, and, therefore, his capital murder conviction cannot stand. He characterizes the homicide as a heat of passion killing.

---

**10.** [T]he courts must not lose sight of the reality that "[a] criminal trial does not unfold like a play with actors following a script." It should come as no surprise that "in the heat of argument, counsel do occasionally make remarks that are not justified by the testimo-

ny, and which are, or may be, prejudicial to the accused."
*United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985) (citations omitted).

This contention is wholly without merit. There was ample evidence from which the jury could infer that the murder was both premeditated and deliberate. As the Missouri Supreme Court stated, "[p]remeditation is present whenever the defendant thinks about the act for any length of time, however short, before he commits it." *State v. Davis*, 653 S.W.2d at 172. Davis got out of his car and fired not one but three shotgun blasts through the windshield of Stroud's patrol car. That the killing was deliberate is shown by Davis' statements both prior to and after the killing. He told two witnesses that he was upset from receiving traffic citations and was going to kill the next officer who stopped him. He also threatened to kill several officers after the killing.

Moreover, it cannot reasonably be argued that Officer Stroud's lawful attempt to stop Davis was an act of provocation. In short, the evidence was more than sufficient to convince a rational trier of fact that Davis was guilty of capital murder beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### TRIAL COURT BIAS.

Davis alleges that the trial court exhibited bias which prejudiced him to such an extent that he did not receive a fair trial. He asserts that the trial court ordered defense counsel to sit down at one point, turned his back to defense witnesses to speak with court personnel, and expressed "intense interest" in the testimony of one of the state's witnesses, and, following the testimony, called the witness to the bench where both of them spoke and laughed.

However, trial counsel did not object to any of this alleged behavior so the record was not properly preserved. In addition, the only evidence of misconduct comes from an affidavit of trial counsel. The Missouri Supreme Court found no error, "plain or otherwise." *State v. Davis*, 653 S.W.2d at 178. We agree. Davis' conclusory allegations, even if true, fall far short of showing that the trial court assumed the role of an advocate for the state.

### DEATH QUALIFIED JURY.

In *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985) (en banc), this circuit held that the exclusion of jurors who hold absolute scruples against the death penalty creates a conviction-prone jury as to the guilt of a defendant in a capital case. A jury which has been "death-qualified" violates the accused's sixth amendment right to have a jury composed of a fair cross-section of the community. *Id.* Davis contends that, because three prospective jurors at his trial were excused for cause because they held absolute scruples against the death penalty, *Grigsby* requires reversal here.

We need not decide this issue at the present time for two reasons. First, Davis did not present this claim to the district court. Therefore, we will not consider it for the first time on appeal. *E.g., George v. Black*, 732 F.2d 108, 111 (8th Cir.1984); *Matthews v. Lockhart*, 726 F.2d 394, 397 (8th Cir.1984). The only times we have departed from this rule is "where the obvious result would be a plain miscarriage of justice." *Kelley v. Crunk*, 713 F.2d 426, 427 (8th Cir.1983) (per curiam). This is not such an exceptional case.

Secondly, Davis has never sufficiently presented this claim to the Missouri courts, and it is therefore unexhausted. The exhaustion requirement is satisfied when petitioner either "(1) has no other presently available state remedies to pursue or (2) has fairly presented the substance of his federal claims to the state's courts." *Graham v. Solem*, 728 F.2d 1533, 1535 (8th Cir.) (en banc), *cert. denied*, — U.S. —, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984).

Davis concedes that he still has a state post-conviction remedy available to him in the form of a Missouri Supreme Court Rule 27.26 motion, but argues that he has fairly presented his *Grigsby* claim to the Missouri

Supreme Court. He points to the following language in the Missouri Supreme Court's opinion: "In the absence of convincing data that a death qualified jury is conviction prone, there is no constitutional infirmity in allowing a defendant to be tried by such a jury." *State v. Davis*, 653 S.W.2d at 174.

■ However, it is this very language that shows that the *Grigsby* issue is unexhausted. "[A] federal claim is not 'fairly presented' to the state courts when factual allegations significantly affecting the determination of that claim are raised for the first time in federal court." *Stranghoener v. Black*, 720 F.2d 1005, 1007 (8th Cir.1983) (per curiam); *Rodriguez v. McKaskle*, 724 F.2d 463, 466 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 520, 83 L.Ed.2d 408 (1984). As the passage quoted from the state court's opinion makes clear, Davis has not provided the Missouri courts with the type of empirical data relied upon in *Grigsby*. It may well be that if such evidence is presented in a Rule 27.26 motion, the Missouri Supreme Court would grant Davis the relief he desires. In any event, we believe the state courts should at least be given the opportunity to rule on the *Grigsby* issue after having the benefit of an examination of empirical evidence. Because there is a "reasonable probability" that the relief sought will be available to Davis in the state courts, *see Powell v. Wyrick*, 657 F.2d 222, 224 (8th Cir.1981), a Rule 27.26 petition cannot be said to be futile. *See also Tyler v. Wyrick*, 730 F.2d 1209, 1211 (8th Cir.) (per curiam) (must be "clear indication" that state court will not entertain Rule 27.26 motion for it to be futile), *cert. denied*, —— U.S. ——, 105 S.Ct. 138, 83 L.Ed.2d 78 (1984).[11]

The judgment of the district court dismissing Davis' petition for habeas corpus is affirmed.

---

**11.** We have addressed the other exhausted claims because Davis indicated that he would waive the *Grigsby* issue were we to find it to be unexhausted. There is, therefore, no mixed petition problem that would require dismissal of the entire petition. *See Rose v. Lundy*, 455 U.S.

509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Graham v. Solem*, 728 F.2d 1533, 1538 (8th Cir.) (en banc) (appellate court may review exhausted claims where petitioner waives unexhausted issues), *cert. denied*, —— U.S. ——, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984).