**Ricky Ray RECTOR, Petitioner,**

v.

**A.L. LOCKHART, Director of the Arkansas Department of Correction, and Winston Bryant, Attorney General of the State of Arkansas, Respondents.**

No. PB–C–92–02.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Jan. 22, 1992.

John M. Jewell, Little Rock, Ark., for petitioner.

Jack Gillean, Asst. Atty. Gen., Little Rock, Ark., for respondents.

## MEMORANDUM OPINION AND ORDER

HENRY WOODS, District Judge.

INTRODUCTION. Ricky Ray Rector ("Rector") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and an application to stay his execution. For the reasons that follow, both submissions are denied.

FACTS. The facts of this case have been well documented. On March 22, 1981, Rector shot and killed Arthur Criswell and wounded two others at a Conway, Arkansas restaurant. Because Rector was known to be the assailant, the police began searching for him.

On March 24, 1981, a uniformed Conway police officer, Bob Martin, went to the home of Rector's mother. Officer Martin was sitting in the living room, visiting with

members of Rector's family, when the following occurred:

> ... Rector entered the back of the house and came into the living room. Rector and the officer knew each other and may have exchanged a few words of greeting. Within a few minutes Rector, who had not joined in the conversation, drew a pistol and shot Officer Martin twice. Rector left by the back door and said to his nephew's wife, whom he met crossing the yard: "I just shot that cop." A few moments later Rector attempted suicide by shooting himself in the forehead, the bullet entering the front part of his brain. That evening the wound was surgically cleaned and closed.

*Rector v. State,* 280 Ark. 385, 659 S.W.2d 168, 169 (1983).

The trauma to Rector's head from the wound resulted in the severance of approximately three inches of his left frontal lobe. *See Rector v. Clark,* 923 F.2d 570, 571 n. 2 (8th Cir.1991). In medical terms, the wound resulted in a frontal lobotomy. *See Id.*

CRISWELL TRIAL. Rector was tried first for the murder of Mr. Criswell. Prior to trial, Rector's attorney moved for a competency hearing. He was examined by several specialists, virtually all of whom testified at the hearing. As the state Supreme Court would later note, the expert testimony at this hearing was "in conflict." *Rector v. State,* 277 Ark. 17, 638 S.W.2d 672, 673 (1982). The trial judge resolved the conflict in favor of the State and found Rector competent to stand trial. He was later tried for, and convicted of, first degree murder in the death of Mr. Criswell.

CRISWELL APPEAL. Rector appealed his conviction to the state Supreme Court. The court affirmed, noting on the issue of his competency, "[w]ith the evidence hopelessly in conflict upon an issue of fact, it cannot be said that the trial judge's conclusion [was] clearly erroneous." *Id.*

MARTIN TRIAL. Rector was next tried for the murder of Officer Martin. Prior to

trial, Rector's attorneys moved for a second competency hearing. He was again examined by several specialists, virtually all of whom testified at this hearing.[1] The evidence at this hearing was "in sharp conflict." *Rector v. State,* 659 S.W.2d at 174. The trial judge again resolved the conflict in favor of the State and found Rector competent to stand trial. He was subsequently tried, and convicted, for the capital murder of Officer Martin. On November 11, 1982, he was sentenced to death.

MARTIN APPEAL. Rector appealed his conviction to the state Supreme Court. One of his claims on appeal challenged his competency to stand trial. The state Supreme Court affirmed his conviction, making the following finding:

> A second argument for reversal is that the trial judge should have found Rector incompetent to stand trial against the death penalty. A parallel question of competency was decided adversely to Rector on his earlier appeal from his conviction for the murder of Arthur Criswell. [Citation omitted]. The proof in the two cases is quite similar, although in this case a witness for the State, Dr. Hamed, thought that Rector's condition was much improved as compared to the time Dr. Hamed saw Rector soon after his surgery.
>
> The expert proof is in sharp conflict, as it was on the other appeal.... We must conclude, as we did on the earlier appeal, that the trial judge's decision is not clearly erroneous.

*Id.* The United States Supreme Court denied certiorari. *See Rector v. Arkansas,* 466 U.S. 988, 104 S.Ct. 2370, 80 L.Ed.2d 842 (1984).

PB–C–84–287. Rector next filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* 727 F.Supp. 1285. His petition contained several claims, most of which were abandoned when he filed an amended petition raising only one claim. The lone claim challenged his competency to be executed. *See* State's Exhibit B. He

---

1. The Court previously summarized the testimony offered at this hearing. *See Rector v. Lockhart,* 727 F.Supp. 1285, 1288–89 (E.D.Ark.1990).

amended this petition to add a second claim, that being, his mental capacity at trial was so diminished as to deny him the effective assistance of counsel. *See* State's Exhibit B.

Because his competency was in question, the Court sent Rector to the federal correction facility in Springfield, Missouri for a complete psychiatric evaluation. Upon his return, the Court conducted a hearing on his petition. One of the questions posed after the hearing was whether to apply the standard promulgated in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), or the standard outlined in § 7–5.6 of the American Bar Association Criminal Justice Mental Health Standards ("ABA standard"). Although the ABA standard was deemed "interesting," the Court found it to have no legal effect. *See Rector v. Lockhart*, 727 F.Supp. 1285, 1292 (E.D.Ark.1990). The Court applied the *Ford v. Wainwright* standard and made the following findings of facts:

(1) There was abundant evidence in support of the trial judge's determination that Rector was competent to stand trial for the murder of Officer Bob Martin.

(2) On the basis of my own independent review of the evidence presented in the state court proceedings and at the habeas hearing before me, I find that Rector was competent to stand trial in November of 1982.

(3) I find that the petitioner is aware of the punishment, its implications, and the reasons he is about to suffer it.

(4) I further find that Rector has a basic, rational understanding of the reason why he has been sentenced to death and why he is presently on death row as a result of being convicted of a capital offense.

*Id.* at 1294. On the basis of these findings, the Court made the following conclusions of law:

(1) The result of the competency hearing in state court is entitled to the presumption of correctness under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) and *Davis v. Wyrick*, 766 F.2d 1197 (8th Cir.1985).

(2) The petitioner's Sixth Amendment Rights were not violated in the state court proceedings. Petitioner was at all times represented by able and conscientious counsel and has been mentally able to assist them in his defense.

(3) The petitioner's present mental condition satisfies the standards of *Ford v. Wainwright, supra,* and his execution would not offend the Eighth Amendment.

*Id.* Thus, his petition was denied.

Rector appealed. He challenged, *inter alia,* the standard used by the Court in determining his competency to be executed. He took the position that the Court erred by applying the *Ford v. Wainwright* standard. Rather, it was his contention that the Court should have applied the ABA standard. The Court of Appeals disagreed:

We agree with the district court that, "[w]hile the [ABA standards] are interesting, they have no legal effect." *Rector, supra,* 727 F.Supp. at 1292. We hold that the district court was correct in rejecting the ABA standards and in selecting the *Ford* test as the appropriate measure of [Rector's] competency.

*Rector v. Clark*, 923 F.2d at 572–73. The Court of Appeals affirmed in whole the findings and conclusions made by the Court. *See Id.* The United States Supreme Court denied certiorari, *see Rector v. Bryant*, —— U.S. ——, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991), and a subsequent request for rehearing, *see Rector v. Bryant*, —— U.S. ——, 112 S.Ct. 34, 115 L.Ed.2d 1115 (1991).

The State subsequently asked the Court to dissolve the stay of execution previously entered. Their request was granted, and the stay was dissolved. *See* Order of November 6, 1991.

ADMINISTRATIVE ACTIVITY. On October 30, 1991, Rector made a request to respondent A.L. Lockhart, Director of the Arkansas Department of Correction, for a mental competency evaluation pursuant to *Ark.Code Ann.* § 16–90–506. *See* Rector's Exhibit A. The request was granted, and a forensic evaluation team from the Arkansas State Hospital ("State Hospital") exam-

ined Rector at the Tucker Maximum Security Unit for approximately one hour on December 10, 1991. Their evaluation was released the following day, although his attorney did not receive a copy for several days. It was the conclusion of the team that Rector was competent to be executed. *See* Rector's Exhibit B. The Governor of the State of Arkansas then scheduled Rector's execution for January 24, 1992.

*PB-C-92-02.* On January 6, 1992, Rector filed a second petition for writ of habeas corpus. *See* 727 F.Supp. 1285. The petition contains two claims. First, *Ark. Code Ann.* § 16-90-506 is unconstitutional "in light of the total absence of procedures to provide [his] due process rights ..." Memorandum at 3. He maintains that the statute fails to comply with the standard outlined in *Ford v. Wainwright.* Second, the statute is unconstitutional "in light of the manner in which [it] was applied by the [State] ..." Memorandum at 3. He therefore asks the Court to stay his execution until he is accorded his due process rights.

■ The State has filed a rather lengthy, four-fold motion to dismiss. It initially maintains that Rector has procedurally defaulted in litigating the claims raised in his petition. Thus, it alleges that federal habeas corpus review of the claims is barred unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. *See Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

The record reflects that Rector has been litigating at least one of these claims in state court. The state trial court denied relief, *see* Respondent's Exhibit 1, and the state Supreme Court has now affirmed, see Respondent's Exhibit 2. The Court finds, for purposes of this Memorandum Opinion and Order, that he has not procedurally defaulted in raising either claim.

■ As his first claim, Rector challenges the constitutionality of § 16-90-506. He specifically alleges that the statute contains numerous constitutional defects and thus fails to comply with the standard outlined in *Ford v. Wainwright.* It cannot be seriously disputed that this claim was not raised in his first petition. For this reason, the State alleges that this claim should be dismissed as an abuse of the writ pursuant to Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts.[2]

"The doctrine of abuse of the writ defines the circumstances in which federal courts decline to entertain a claim presented for the first time in a second ... petition for ... writ of habeas corpus." *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1457, 113 L.Ed.2d 517 (1991). The rationale for the doctrine is governed by equitable principles, including the principle that "a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963).

■ An abuse of the writ occurs when a new claim is asserted in a second petition but the claim was available at the time of the first petition. *See Gilmore v. Delo,* 908 F.2d 385, 387 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 20, 111 L.Ed.2d 833 (1990). When abuse of the writ is raised by the State, *McCleskey* instructs the lower courts to engage in the following examination:

[T]he government bears the burden of pleading abuse of the writ. The government satisfies this burden if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that prisoner has abused the writ. The burden to disprove abuse then becomes petitioner's. To excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom as those concepts have been defined in

---

**2.** Rule 9(b) provides, in relevant part, that a second petition may be dismissed if new or different grounds are alleged and the judge finds that the failure to assert the grounds in the prior petition constitutes an abuse of the writ.

our procedural default decisions. The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard. If petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim.

*McCleskey v. Zant*, 111 S.Ct. at 1470. Thus, the federal courts will not entertain the new claim if it had previously been deliberately abandoned or not asserted in the first petition as a result of inexcusable neglect. *See Id.* 111 S.Ct. at 1467–70. Neglect is excusable if a showing of cause and prejudice is made or a fundamental miscarriage of justice based on actual innocence will occur. *See Id.*

Rector has filed a second petition. The State has pleaded abuse of the writ and has outlined his prior writ history. This history recounts the claims asserted in his first petition, those being, he was incompetent to be executed and his mental capacity at trial was so diminished as to deny him the effective assistance of counsel. *See* State's Exhibit B. The State has also identified the claim appearing for the first time in this petition, that being, a challenge to the constitutionality of § 16–90–506. Thus, in accordance with *McCleskey*, the burden to disprove abuse of the writ shifts to Rector. He must offer an excuse for his failure to raise this claim in his first petition.

As his excuse, Rector maintains that this claim could not have been raised before because it did not arise until after the dismissal of his first petition. Although the Court is not prepared to find that he deliberately withheld the claim, the Court is not convinced that he has shouldered his burden by demonstrating excusable neglect.

First, Rector has no cause for his failure to raise the claim in his first petition. It is true that the evaluation did not occur until after the dismissal of his first petition. However, nothing prevented him from seeking an earlier evaluation. The Court cannot discern how he was required to wait until the eleventh hour to seek the evaluation. Although the statute does not require the State to act upon a request, the request Rector eventually made could have been made at anytime after his sentence was imposed. His competency to be executed has long been at the forefront of his campaign for collateral relief, and he could have certainly foreseen his present challenge to the statute. A reasonable investigation aimed at including all relevant claims in his first petition would have revealed this claim and allowed him to develop it. *See Id.* 111 S.Ct. at 1472 (requirement of cause is based on principle that litigant must conduct a reasonable and diligent investigation aimed at including all relevant claims in his first petition).

Second, Rector can demonstrate no actual prejudice. He complains that the statute does not comply with the standard outlined in *Ford v. Wainwright*, yet he has already received the very examination he now demands. Once his competency was placed in question, the Court sent him to the federal correction facility in Springfield, Missouri for a complete psychiatric evaluation. Rector does not suggest that the report compiled by the facility was prepared in violation of some constitutional right or was in error. Because he does not suggest that his competency has changed since his examination, the Court has considerable difficulty in ascertaining how a second examination might be required.

Last, Rector has not demonstrated that a fundamental miscarriage of justice will result from a failure to entertain this claim. Because the evidence of his guilt is simply overwhelming, this case is not one of the extraordinary instances in which a constitutional violation has probably caused the conviction of one innocent of the crime. More in the context of this case, the Court is not prepared to find, given the evidence of his competency, that he is not competent to be executed.

On the basis of the foregoing, the Court finds that the first claim advanced by Rector was not raised in his first petition, and

he has failed to shoulder his burden of showing excusable neglect. He has abused the writ by attempting to litigate this claim in his second petition. It is therefore dismissed as such pursuant to Rule 9(b).

■ As his second claim, Rector maintains that § 16–90–506 is unconstitutional in light of the manner it was applied. The Court acknowledges some difficulty in giving this claim its proper construction. The State understands Rector to be challenging the procedure employed for evaluating his competency to be executed, *i.e.*, which standard of competency should be applied. The State takes the position that the Court previously resolved this question in the first petition, specifically, the prevailing legal standard is *Ford v. Wainwright.* The Court is not convinced, however, that this construction is entirely correct.[3] Rather, he apparently alleges that the statute creates a liberty interest and the State's failure to comply with the statute violated his due process rights.

Assuming, *arguendo*, that Rector has not abused the writ by attempting to litigate this claim in his second petition,[4] the statute he challenges establishes a procedure for determining whether a condemned is insane. It provides, in part:

(d)(1) When the superintendent of the state penitentiary is satisfied that there are reasonable grounds for believing that a convict under sentence of death is insane, he may transfer the convict to the Arkansas State Hospital and thereupon notify the Governor of this action. The state hospital officials shall cause an inquiry to be made into the mental condition of the convict within thirty (30) days from his arrival at the state hospital and report thereon to the superintendent of the state penitentiary and to the Governor.

(A) If the convict is found to be sane, the superintendent of the state hospital shall turn him over to the superintendent of the state penitentiary and the Governor shall order the execution to be carried out according to law.

(B) ...

*Ark.Code Ann.* § 16–90–506(d)(1).

■ In determining whether the statute creates a liberty interest, the Court applies a two-part test: (1) " 'does [the] statute ... contain *particularized substantive standards* or criteria that significantly guide the decision makers' " and (2) " 'does the statute ... use mandatory language requiring the decision makers to act in a certain way.' " *Williams v. Armontrout,* 852 F.2d 377, 379 (8th Cir.1988) [quoting *Nash v. Black,* 781 F.2d 665, 668 (8th Cir. 1986) ] [emphasis in original].

The Court is not convinced that the statute creates a liberty interest. The statute does contain some standards. As will be demonstrated, though, it does not contain the particularized substantive standards to significantly guide the decision makers. Moreover, the statute's mandatory language is not such that the decision makers are required to act in a certain way.

Assuming, *arguendo*, that the statute creates a liberty interest, no due process violation occurred because its requirements were followed. Rector made a request to respondent Lockhart for an evaluation. *See* Rector's Exhibit A. As Rector notes, Lockhart was under no obligation to order the evaluation. *See* Response at 10. Lockhart apparently held the opinion that reasonable grounds existed for believing Rector was insane because Lockhart ordered the evaluation. Lockhart was not obligated to send Rector to the State Hospital for the evaluation or notify the Governor, and

---

**3.** If the State's construction of the claim is correct, the claim would clearly be successive. The Court previously found *Ford v. Wainwright* to be the prevailing legal standard, and this finding was affirmed by the Court of Appeals.

**4.** The Court notes that Rector did not raise this claim in his first petition. He has cause for failing to do so because the claim was not available at the time he filed the first petition. It would have been impossible for him to raise the

claim earlier because he could not have anticipated how the statute would be applied. Nevertheless, it would appear that Rector can demonstrate no prejudice. He has already received an evaluation in accordance with the prevailing legal standard, *Ford v. Wainwright.* In addition, he cannot show that a fundamental miscarriage of justice based on his mental condition will occur. Thus, this claim appears to be subject to dismissal pursuant to Rule 9(b).

Lockhart apparently chose not to. The evaluation could have been conducted, and was in fact conducted, at the institution. Lockhart was not obligated to use officials at the State Hospital to conduct the evaluation, but he chose to do so. The State Hospital officials were not obligated to conduct an evaluation of any particular length; they were only required to conduct the evaluation within thirty days after Rector's arrival at the State Hospital. However, Rector was never sent to the State Hospital so the officials were not obligated to conduct the evaluation within any particular period. If Rector was found sane, which he was, the State Hospital officials were required to turn him over to Lockhart. However, the officials never had custody of Rector. The Governor was obviously notified of the evaluation and, in accordance with the statute, the execution was ordered. As this analysis demonstrates, Rector received all the benefits conferred by the statute. His claim is therefore without merit.

CONCLUSION. Rector faces a rapidly-approaching execution. In this eleventh hour, his petition, when pared to its essence, challenges his competency to be executed. No one who has considered this claim and applied the prevailing legal standard has concluded that he is incompetent to be executed.

The first claim made by Rector is that § 16–90–506 is unconstitutional. The Court finds that he has abused the writ by attempting to litigate the claim in this petition. For this reason, the claim is dismissed pursuant Rule 9(b). The Court is not convinced that his second claim—the statute is unconstitutional in light of the manner it was applied—creates a liberty interest. Assuming, *arguendo*, that such an interest is created, no due process violation occurred because the requirements of the statute were followed. His petition and his application to stay his execution are therefore denied.

IT IS SO ORDERED.