**Jimmy Lewis JAMES, Appellant,**

v.

**STATE OF IOWA, Appellee.**

No. 96–1126.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1996.

Decided Nov. 13, 1996.

Patrick W. O'Bryan (argued), Des Moines, IA, for appellant.

Thomas D. McGrane (argued), Des Moines, IA, for appellee.

Before BEAM, HEANEY, and MURPHY, Circuit Judges.

HEANEY, Circuit Judge.

Jimmy Lewis James was convicted in Iowa of first-degree kidnapping, assault with intent to commit sexual abuse, and third-degree sexual abuse. The court sentenced him to a mandatory term of life imprisonment. The Iowa Supreme Court affirmed his conviction. *State v. James,* 393 N.W.2d 465 (Iowa 1986). James applied for state postconviction relief, which was denied by a state district court and affirmed on appeal by the Iowa Supreme Court; a three-justice panel dismissed James's appeal under Iowa Rules of Appellate Procedure.[1] James next petitioned for a writ of habeas corpus in federal court under 28 U.S.C. § 2254, alleging that he was incompetent to stand trial and that he received ineffective assistance from his trial

---

1. James's counsel filed a Motion to Withdraw based on counsel's belief that the appeal was frivolous under Iowa Rules of Appellate Procedure.

counsel. The district court denied the petition. James appeals and we affirm.

## I.

On September 12, 1984, Jimmy Lewis James was taken to the emergency room at a local hospital by police officers who were concerned by his appearance and behavior. At the hospital, Thomas Garside examined, evaluated, and attempted to treat James. Dr. Garside reported that James was demonstrating signs of fear, panic-like symptoms with impaired judgment, hypermania, and some mental illness. Dr. Garside concluded that James posed no immediate threat to himself or others and recommended voluntary inpatient admission to James, but James refused. Dr. Garside prescribed medication for James on his release as he believed James's condition would otherwise deteriorate. James refused to take the medication at the hospital and never filled the prescription.

Later that evening, James went to see his former girlfriend, who testified that James threatened her, beat her, and sexually abused her. Early the next morning, James encountered several young women and convinced one of the women to return to his apartment. The woman changed her mind en route, but James restrained her until they arrived at his building. He then forced the woman into his apartment and, over the next seven hours, subjected her to severe physical and sexual abuse and torture. At one point, James left the apartment and the woman called the operator for help. James returned shortly before the police arrived. The police forced their way into the apartment, freeing the woman and arresting James.

The next day, the police referred James to the local hospital for evaluation and treatment. Dr. Garside again examined James and concluded that he was in an acute manic state. According to Dr. Garside, James exhibited elements of mania, paranoia, and schizophrenia. He diagnosed James as having an acute manic paranoid syndrome, which is considered a mood disorder rather than a thought disorder. Dr. Garside concluded that James was acutely mentally ill, required medication for control, and was not competent to understand the charges against him or to assist his attorney.[2]

Dr. Garside transferred James to a state mental health facility. At the facility, Dr. Curtis Frederickson evaluated James to determine whether he was competent when he committed the crimes and whether he was competent to stand trial. Dr. Frederickson concluded that James had the capacity to distinguish right from wrong, to understand the nature of the charge, to assist his attorney, and to form intent consistent with accountability. On the basis of Dr. Frederickson's report, the court allowed James's prosecution to proceed.

On January 15, 1985, prior to trial, James's trial attorneys requested and were granted the right to have James examined by Dr. Ordona, a psychiatrist who had earlier treated him. The examination never took place, however, because Dr. Ordona had lost his hospital privileges. James's counsel took no steps to find another doctor to examine James, and the case proceeded to trial. James pleaded the affirmative defenses of insanity and diminished responsibility. Both Dr. Garside and Dr. Frederickson testified extensively at James's trial.

Consistent with his earlier report, Dr. Frederickson testified that James had the ability to distinguish right from wrong, and that he knew the nature and quality of his acts at the time of his assaults. Dr. Garside gave no opinion about James's state of mind during the assaults, although he stated his belief that James's condition could have deteriorated during the period when the assaults occurred to where James could not control his impulses.

---

**2.** Dr. Garside was not able to obtain sufficient information regarding the events of September 12th and 13th, so he gave no opinion about James's knowledge of right and wrong or appreciation of the nature and quality of his acts at the time of the crimes. Dr. Garside did, however, conclude that between September 14th and 15th, James's condition could have deteriorated to a state in which he would have been unable to control impulses and could strike out at a person he thought was rejecting him.

## II.

### A. State Court Finding of Competence

 James claims that his Sixth Amendment rights were violated because, contrary to the determination made by the state district court's dismissal of this claim. The Sixth Amendment protects incompetent persons from standing trial. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Speedy v. Wyrick,* 748 F.2d 481, 484 (8th Cir.1984). A state court's finding that an accused is competent to stand trial enjoys a "presumption of correctness." *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (per curiam); *Davis v. Wyrick,* 766 F.2d 1197, 1201 (8th Cir.1985). In determining whether a defendant is competent, "[c]riminal law presumes that individuals are competent ... and a finding of competence, once made, continues to be presumptively correct until some good reason to doubt it is presented." *Garrett v. Groose,* 99 F.3d 283, 286 (8th Cir.1996) (citing *Smith v. Armontrout,* 865 F.2d 1502, 1506 (8th Cir.1988) (en banc)). The deference given to a state court's finding of competence remains unless the reviewing court finds that "the applicant did not receive a full, fair, and adequate hearing in the State court proceeding" or that "the applicant was otherwise denied due process of law in the State court proceeding." 28 U.S.C. § 2254(d)(6)-(7) (1994); *Sumner v. Mata,* 449 U.S. 539, 544–45, 101 S.Ct. 764, 767–68, 66 L.Ed.2d 722 (1981).

 To succeed on his due process claim, James must present clear evidence showing that the state court's determination of his competence was wrong. *Id.* at 550, 101 S.Ct. at 770–71. James has not shown that the court's finding of his competence is unsupported by the record or that either of the section 2254(d) conditions has been met. The court heard testimony from two psychiatrists, who, relying on their examinations of James more than nineteen weeks earlier, disagreed about James's competence to stand trial. The trial court determined that James was competent to stand trial after observing James and hearing the testimony of the psychiatrists.

The reliability of a competency determination is not shaken where "there is no indication that there [is] any new evidence to be presented on the competency issue at the time of trial." *Davis,* 766 F.2d at 1201 (holding that a ten-month-old competency hearing report establishing that the defendant was competent was reliable). James's mere assertion that his condition required an evaluation closer in time to the trial does not provide the required evidence that the record on which the court relied was unreliable. Furthermore, the results of Dr. Frederickson's evaluation, James's conduct at his arraignment, and his appearance at trial "fairly supported" the trial court's determination that James was competent to stand trial. *See Weisberg v. Minnesota,* 29 F.3d 1271, 1278 (8th Cir.1994).

### B. Ineffective Assistance of Counsel

 James also alleges that counsel's performance was ineffective for failing to secure an additional defense examination of James prior to his competency hearing. The standard for evaluating a claim of ineffectiveness of counsel is whether counsel's conduct was so defective as to require a new trial. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). The inquiry has two components. First, the defendant must show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. Second, the defendant must show that the defense provided to the defendant was prejudiced by counsel's deficiencies. *Id.* A defendant must meet both conditions to prevail on an ineffective assistance claim, and the court need not address both if one condition is insufficiently established. *Bell v. Lockhart,* 2 F.3d 293, 299 (8th Cir.1993).

 James's claim does not satisfy both conditions. He fails to provide evidence that he was prejudiced by counsel's decision not to conduct an additional evaluation. James's assertion, based on the psychiatrists' reports, that his mental state was subject to change does not demonstrate that his mental state

had in fact changed between his first examination and his trial.

To show prejudice on this claim, James must present strong evidence that shows that the state court erred in its finding of competence. Although we do not identify a specific form of evidence to meet this burden here, the evidence must do more than speculate that the petitioner may have been incompetent. Without some credible evidence of actual incompetence, we cannot conclude that James established "a reasonable probability that, but for counsel's [actions], the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

 Absent a showing of prejudice, it is not necessary to decide whether counsel's failure to have James undergo a second examination constituted deficient performance. On its face, this case causes us grave concern. James's behavior prior and subsequent to his unlawful acts, his veterans disability status for mental illness, and the opposing views of the psychiatrists who testified strongly suggest that a supplemental competency examination was warranted and that counsel's failure to have one conducted constitutes deficient performance. That concern, however, is offset in this case by the district court's determination that counsel's decision not to conduct an additional examination had a strong strategic element. Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful. *Stacey v. Solem,* 801 F.2d 1048, 1051 (8th Cir.1986). In the court's opinion, even if Dr. Ordona had conducted an exam, his credibility would have been seriously questioned. James's counsel pursued a strategy that focused on a reduced responsibility defense, relying on Dr. Garside's testimony; counsel might well have determined that Dr. Ordona's testimony could do more to damage James's defense than to support it. James has presented no evidence to counter the court's conclusion that counsel was acting for reasonable strategic purposes. In any event, because James does not meet the *Strickland* prejudice standard, the district court properly denied James's ineffectiveness of counsel claim.

## III.

For the foregoing reasons, we agree with the district court that James was competent to stand trial and that he was not denied effective assistance of counsel. We therefore affirm the district court's denial of James's petition for a writ of habeas corpus.