**UNITED STATES of America ex rel. Norman Benjamin PARSON, Appellant,**

v.

**Raymond W. ANDERSON, Warden, Appellee.**

No. 73–1082.

United States Court of Appeals, Third Circuit.

Argued June 18, 1973.

Decided July 11, 1973.

Richard E. Poole, Potter, Anderson & Corroon, Wilmington, Del., for appellant.

Jerome O. Herlihy, Chief Deputy Atty. Gen., Wilmington, Del., Peter Warren Green, Wilmington, Del., for appellee.

Before VAN DUSEN, ALDISERT and ADAMS, Circuit Judges.

OPINION OF THE COURT

PER CURIAM:

Petitioner Norman B. Parson, convicted by the state of Delaware of murder in the first degree,[1] appeals to this Court from the denial by the district court of his petition for habeas corpus.[2] Determining the propriety of granting his petition requires this Court to consider questions involving the role of amnesia in establishing this defendant's competence to stand trial.[3] Resolution

---

1. The facts of this grisly killing are set forth in Parson v. State, 222 A.2d 326 (Sup.Ct.1966).

2. United States ex rel. Parson v. Anderson, 354 F.Supp. 1060 (D.Del.1972).

3. Parson raises the inter-related issues of excessive pre-trial publicity and prejudice on the part of members of the jury. We affirm the findings of the district court rejecting such claims. See United States

of that issue requires a brief explication of the involved procedural history of this case.

Parson was arrested on the night of January 31, 1964 in connection with a homicide that had occurred earlier that evening.[4] He was indicted for murder in the first degree, and provided with appointed counsel. Prior to standing trial, Parson underwent extensive psychiatric and psychological examination. During Parson's trial, which began in January, 1965, "No defense of insanity at the time of the crime was asserted and no hearing on competency to stand trial was requested or held."[5] Parson was convicted of murder in the first degree and that conviction was affirmed on appeal.[6] Certiorari was denied by the U.S. Supreme Court.[7]

Having unsuccessfully sought direct appellate review of his conviction, Parson then filed a petition for habeas corpus in the district court. That court concluded that substantial doubts had been raised concerning Parson's competence at the time of his trial. The district court then proceeded to hold a hearing to determine whether it was possible accurately to assess, at that time, Parson's mental state on the occasion of his first trial. Concluding that such assessment was impossible, the court, pursuant to Pate v. Robinson,[8] ordered that the writ of habeas corpus be granted unless the state retried Parson.

Before retrial by the state, extensive psychiatric and psychological studies were again conducted. Parson was found competent to stand trial and was once more convicted. "No plea of insanity at the time of the crime was entered and no evidence of such insanity was introduced by the defense."[9] This second conviction was affirmed,[10] and Parson again sought habeas corpus in the district court.

Stated simply, Parson's basic contention here is that because he suffered from amnesia concerning the events that occurred at the time of the homicide, he could not properly assist in his own defense and was therefore incompetent to stand trial.

Two possible avenues of defense were open to Parson: (a) rebuttal of the prosecution's evidence, (b) the insanity defense. Were his amnesia to appear to have blocked entry to either avenue, this Court would then have to consider whether such amnesia did, in fact, render Parson incompetent to stand trial.[11]

■ The state trial court and the U. S. District Court found under the circumstances and the evidence adduced that Parson's amnesia did not diminish his capacity either to understand the proceedings against him or properly to assist in his own defense.[12] We hold that these findings are not clearly erroneous.

---

ex rel. Parson v. Anderson, 354 F.Supp. at 1078–1087.

4. Shortly after his arrest, Parson gave to the police a five-page written statement explaining his conduct that evening. At some point thereafter, however, he claimed that he developed amnesia concerning the events of that evening. The trial judge presiding at Parson's second trial found "the most 'reasonable assumption' was that Parson's amnesia was genuine." 354 F.Supp. at 1068.

5. 354 F.Supp. at 1066.

6. Parson v. State, 222 A.2d 326 (Sup.Ct. 1966).

7. 386 U.S. 935, 87 S.Ct. 961, 17 L.Ed.2d 807 (1967).

8. 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

9. 354 F.Supp. at 1069.

10. Parson v. State, 275 A.2d 777 (Sup.Ct. 1971).

11. See Wilson v. United States, 129 U.S. App.D.C. 107, 391 F.2d 460 (1968).

12. See Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). The Supreme Court stated that, in determining a defendant's competency to stand trial:

the "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

Had the proof of Parson's commission of the crime been based on eyewitness testimony, or had the prosecution relied substantially on statements attributed to Parson, his amnesia might have significantly hindered the preparation and presentation of a rebuttal defense. No such evidence was presented here.[13] Rather, the evidence was of a physical nature.[14] Thus, it would appear that the amnesia did not meaningfully affect the availability of this type of defense.

Amnesia may at times make difficult the employment of an insanity defense. In this case, however, an insanity defense was neither asserted nor attempted. Nor is it suggested that this was a mere oversight or the result of improper assistance of counsel. On the contrary, the district court found:

> "The defense declined to introduce other evidence of defendant's mental condition [it had introduced evidence of his amnesia] because the court ruled that such testimony would open up the issue of the defendant's mental condition and would allow the state to introduce evidence which the defense felt might be prejudicial." [15]

■ Because the defense's trial strategy deliberately omitted a defense based on insanity,[16] Parson cannot now be heard to contend that the defense was unavailable to him because of his amnesia. Therefore, we hold that, in the context of this case, the fact that the defendant suffered amnesia as to the commission of the crime, does not, in and of itself, render the defendant incompetent to stand trial.

■ Parson further contends that the state failed to prove his sanity *at the time of the commission of the crime.* He argues that intent is an element of the crime and that it is the prosecution's obligation to prove intent by negativing the possibility of the defendant's insanity. Under Delaware law, the defense must serve notice of the insanity defense and tender evidence of insanity at trial; absent such notice and evidence the defendant is presumed sane.[17] Without deciding whether this presumption would pass constitutional muster if the defense of insanity had been asserted or attempted without conforming with the Delaware procedure,[18] we find that, in this case where the insanity defense was advertently not asserted or attempted, the state is not obligated to prove the defendant's sanity in the first instance.[19]

The order of the district court will be affirmed.

ALDISERT, J., concurs in the result.

---

13. Parson had made an inculpating written statement for the police shortly after his arrest. This statement was not introduced at this trial. 354 F.Supp. at 1069. He also made two oral comments. These were admitted uncontradicted. One statement was "I am in a mess of trouble." The other revealed the location of the victim's body, which was, in any event, easily discoverable. In view of the overwhelming physical evidence and the fact that he was at the scene of the crime when the killing took place, it cannot be contended that these statements were at all important in the trial of this case.

14. The physical evidence adduced, linking Parson to the crime, included samples of Parson's blood, fingernail scrapings and pubic hair. 354 F.Supp. at 1087.

15. 354 F.Supp. at 1069.

16. *Cf.* Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

17. 354 F.Supp. at 1077.

18. *Cf.* Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

19. *See* In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *Compare* Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).