**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**RAPHAEL ALEXANDER JOSEPH, Defendant**

Case Nos. SX-11-CR-109 and SX-14-CR-164

Superior Court of the Virgin Islands

Division of St. Croix

July 21, 2015

BRADY, *Judge*

## MEMORANDUM OPINION AND ORDER

(July 21, 2015)

THIS MATTER is before the Court on Defendant's Motion to Dismiss the Rape Cases Pending against Him on the Grounds that He is Incompetent to Stand Trial ("Motion"), filed October 20, 2014 and the People's Response, filed December 2, 2014. For the reasons that follow, Defendant's Motion will be denied.

## BACKGROUND

Defendant was released from incarceration in 2007 after serving part of a twenty year sentence following his conviction for rape. In 2011, he was charged for allegedly raping his "girlfriend" and, in a separate incident, was charged in the first of the present matters (SX-11-CR-109) for the alleged rape of a woman at Sandy Point National Wildlife Refuge. The former case was dismissed without prejudice in 2013 on motion of the People. In 2014, while awaiting trial in SX-11-CR-109, Defendant

escaped from detention and allegedly raped the same "girlfriend," resulting in the filing of SX-14-CR-164 when Defendant was recaptured.

Jury selection and trial in SX-11-CR-109 were set to commence on April 7, 2014. At the final pretrial conference on April 3, 2014, Defendant informed the Court for the first time that, as a result of childhood head trauma,[1] he suffers from periodic blackouts and resulting memory loss. According to Defendant, he is unable to recall the events in question in the cases pending against him as a result of these amnesic episodes. Defendant moved for a continuance of the trial date and for an order for a psychiatric and psychological evaluation to determine his competency to stand trial. Defendant's motions to continue the trial and for the requested evaluations were granted over the People's objection. Thereafter, the Psychiatric Evaluation of Dr. Everlie Sang, dated August 4, 2014, and the Confidential Psychological Evaluation of Dr. Gloria Mendez, "Date of Testing: June 4, 2014," were submitted to the Court. A competency hearing ("Hearing") was scheduled and held October 8, 2014.

At the Hearing, Dr. Sang, a forensic psychiatrist, and Dr. Mendez, a psychologist, testified as experts in their respective fields. Defendant also testified. Dr. Sang and Dr. Mendez described the tests each had independently performed on Defendant, each ultimately concluding that she found him capable of assisting his counsel and competent to stand trial.

Dr. Sang read from her report which had been admitted into evidence, indicating that Defendant ". . . recalls all the incidents of rape as he relates them, meaning he recalled, the entire incidents of each rape that he committed." Hearing Transcript ("Tr."), p. 14:4-7. Dr. Sang detailed the "mental status exam" she administered to Defendant, stating that Defendant did not present any "acute or chronic neurological deficit" nor was he "psychotic at the time he committed those offenses or when I examined him." Tr., p. 15:7-11. She also tested "the ability of his brain to

---

[1] Defendant was knocked down by his family's German Shepherd "like five, four, six foot and I hit my head. . . . [m]y skull is still fractured up to this day. . . . [W]hen I hit the ground I lost consciousness. When I did catch myself back, she [the dog] had her tongue in my mouth. She was licking my face and I tried to push her up off me. When I got up, blood came through my nose. I went to the hose in back, washed off, and went back to playing. I ain't tell nobody . . ." Tr., pp. 28:14-29:9.

do certain functions, in particular the frontal lobe, which he passed with flying colors." Tr., p. 15:19-22. Testing "the functioning of his frontal lobe" assists in determining "[w]hether he had good working memory." Dr. Sang found Defendant's frontal lobe to be functioning "perfectly." Tr., pp. 15:25-16:3. "Memory was intact in that he could remember all of the incidents. He was a very bright man." Tr., p. 16:5-7.

Dr. Mendez testified concerning her examination of Defendant conducted June 4, 2014, wherein she administered two tests: "a test of non-verbal intelligence" and "a test called the evaluation of competency to stand trial," and conducted "a clinical interview." Tr., p. 21:4-10. Dr. Mendez conversed with Defendant in both Spanish and English and was surprised and impressed at his bilingual ability "because he doesn't come from a Spanish background." Tr., p. 22:2-3. She also described Defendant as "an intelligent man." Tr., p. 22:11-14.

Dr. Mendez testified concerning "the evaluation of competency to stand trial" exam wherein she "asked a lot of questions about the court and the proceedings of the court, and he was very knowledgeable of the court proceedings." Tr., p. 22:15-18. Dr. Mendez testified that Defendant "does admit he used drugs. He used drugs. He likes drinking alcohol, and he admits that at times he can't recall what he has done the night before because he's been under the influence." Tr., p. 23:5-8. As to the incident at Sandy Point, Defendant "could not recall the offense. He claimed he had been drinking and using drugs that night, and he recalls having entered properties, remembers getting into an argument but claims not to remember — alleges not to remember having raped the woman." Tr., p. 26:7-12. Dr. Mendez concluded that Defendant "doesn't appear to be psychotic, and I believe he's competent to stand trial." Tr., p. 23:8-10.

Defendant testified at the Hearing regarding the childhood incident that he now believes continues to affect his mental state and memory. When the incident occurred "I ain't tell nobody." Tr., p. 29:13. He testified that in the months following the incident, the injury had no effect on him, and that it was only "recently . . . 2011" that he first noticed effects that he attributes to the childhood incident. Tr., pp. 29:18-30:3.

Defendant testified that he had memories up to and following the alleged rapes but that he had no recollection of the alleged rapes themselves, and could not remember anything while these acts were allegedly ongoing. On the day of the Sandy Point incident, he testified "that day when this happened I was using more than the average human

would. . . . That day we were working out in the sun drinking, drinking, smoking, that's all we were doing." Tr., pp. 48:25-49:11. He testified that he has no recollection of the incident. "Like I said, last recollection, I had this tunnel vision, when I catch myself she was there. . . . We was engaging in sex." Tr., p. 51:9-14. Further, "Like I said, I don't know what happened. Q: So you just wake up and there you are having sex with this caucasian on the beach? A: Yes." Tr., p. 52:1-4.

Defendant testified concerning the 2011 alleged rape of his "girlfriend" where the case was dismissed. "It was never no rape, that's why it got thrown out." Tr. 40:12-13. Concerning the alleged rape of the same person giving rise to SX-14-CR-164, Defendant confirmed that he did not experience a substance-induced blackout. "I was off all kind of liquors. I ain't had no kind of drugs there so I don't know if that has an effect on it or whatever but . . . I was clean." Tr., p. 42:2-8. Yet, Defendant claims no recollection of the incident that occurred in the area of Claude O. Markoe School in Frederiksted. "After I escaped, I reach by the girl and she kind of get in an argument. . . . And she just keep on arguing and arguing and that's the last thing I remember." Tr., p. 33:10-15. When asked where he was when he "came back to your senses," Defendant replied "I was down in Frederiksted by, um, Cora Christian's office," with no recollection as to how he got there. Tr., pp. 33:23-34:4.

Defendant mentioned his experiences with drugs as affecting his memory, and implied that drug use was the cause of his inability to recall details of having sex on the beach with the woman at Sandy Point. He also claims, without medical evidence or other competent proof that he has recently come to understand that he cannot recall the facts surrounding the alleged rapes as a direct result of his childhood head injury. As such, Defendant argues that he is not competent to stand trial because he cannot recall the incidents in question and therefore cannot assist his counsel in his own defense.

In support of this argument, Defendant cites several cases involving amnesic episodes during criminal acts. In *United States ex rel. Parson v. Anderson*, 481 F.2d 94 (3d Cir.), cert. denied, 414 U.S. 1072, 94 S. Ct. 586, 38 L. Ed. 2d 479 (1973), the Third Circuit held that ". . . for amnesia to render a Defendant incompetent to stand trial, the amnesia must hinder an available defense, and typically will not hinder a defense against physical evidence." Motion, 4; citing *Anderson*, 481 F.2d at 95-96. Defendant argues that, while physical evidence, such as blood samples,

would withstand a competency argument, since the People's case is premised on testimonial evidence, Defendant's amnesia prevents him from rebutting such testimony because he is unable to remember the events. Motion, 5.

The People argue that Defendant is competent because he is intelligent and more than capable of assisting counsel with his defense. Defendant can read and understand *Scientific American*[2] as well as his prior discovery. Opposition, 3. Additionally, his comment during the Hearing concerning a prior rape charge that "it was never no rape . . ." demonstrates at least a partial ability to recall specific information regarding past events. *Id.*

The People ultimately contend that Defendant's amnesia, primarily recurring during periods of forced sexual intercourse, is purely fabricated. *Id.* at 4. They cite to the Hearing where Dr. Sang stated that Defendant ". . . recalled the entire incidents of each rape that he committed." *Id.* at 5. Further, in concluding that Defendant is competent to stand trial, Dr. Sang detailed the tests which she performed, ultimately finding that he had the intellectual ability to remember events and assist his counsel in the legal process. *Id.* at 6.

Additionally, the People argue that even Defendant's own testimony establishes that he is competent to stand trial. Defendant was able to recall the specific events in February 2011 leading up to the alleged Sandy Point rape (the route he took; the fact that he had intercourse with a Caucasian woman; and the fact that he left the beach with a cell phone that he obtained from "the Sandy Point thing.") *Id.* at 7-9. The People highlight the fact that, following Defendant's purported blackout, he awoke near the woman and ran away, which "exhibits a consciousness of guilt. Hence, if Defendant had no recollection as to what occurred, it would be unlikely that he would conclude that he must have done something wrong, namely had intercourse with the female without her consent. This thought process is a clear contradiction of his claim that he experiences immediately before the circumstances leading up to the alleged rape, until

---

[2] Off the record, Defendant's counsel advised the Court and People's counsel at the April 3, 2014 pretrial conference in SX-11-CR-109 that while detained pending trial, Defendant had recently read an article in *Scientific American* magazine that from his perspective linked his childhood head trauma to the mental issues that he contends render him unable to competently assist his counsel at trial.

109

he finds himself in some other location, without knowledge as to how he got there." *Id.* at 7-8.

Finally, the People dispute Defendant's reliance on *Anderson*, arguing that it differs from this case because the issue of Defendant's competency was raised post-trial, after the presentation of the prosecution's case was already a matter of record. The People claim that Defendant's Motion requires that the Court pre-judge the People's evidence to be presented at trial. Therefore, Defendant's differentiation between physical and testimonial evidence regarding the application of his competency defense is premature. *Id.* at 10.

## DISCUSSION

■ "The Legislature of the Virgin Islands may not adopt or enforce a local law, ordinance, resolution or rule having the force of law that includes being mentally disturbed . . . as a criminal offense." V.I. CODE ANN. tit. 19, § 727(a). The standard for determining the mental competency of a criminal defendant is ". . . whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). The People have the burden ". . . of proving a defendant's competency to stand trial by a preponderance of the evidence." *People of the Virgin Islands v. Hyman*, 2012 V.I. LEXIS 33, at *5-6 (V.I. Super. Ct. July 30, 2012). "In determining whether a defendant is competent to stand trial, court[s] must examine the unique circumstances of the case and decide whether the defendant (1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial." *United States v. Brown*, 2015 U.S. Dist. LEXIS 45664, at *7-8 (E.D. Pa. Apr. 8, 2015) (citing *United States v. Jones*, 336 F.3d 245, 256 (3d Cir. 2003) (internal quotations and citations omitted)). Courts examine "the 'evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.'" *Id.* (quoting *Jones*, 336 F.3d at 256 and *United States v. Leggett*, 162 F.3d 237, 242 (3d Cir. 1998)).

■ In weighing testimony presented at a competency hearing, the trial judge is afforded considerable discretion in evaluating competing positions, if any exist, regarding a defendant's competency to stand trial.

As the District Court in *Brown* opined, the trial judge ". . . is in the best position to evaluate credibility of experts, is permitted to assign greater weight to some opinions over others, or altogether reject certain expert opinions." *Brown*, 2015 U.S. Dist. LEXIS 45664, at *33-34 (*See, e.g., United States v. Ghane*, 490 F.3d 1036, 1040 (8th Cir. 2007) ("stating that [a] district court may rely on one of two competing competency opinions given by qualified experts") (internal citation omitted); *United States v. Mahoney*, 717 F.3d 257, 264-66 (1st Cir. 2013) ("holding that the district court did not err by relying on the testimony of one expert and its own observations rather than on the testimony of another expert.").

As to the issue of temporary onset amnesia, Defendant and the People contest the applicability of *U.S. v. Anderson*. *Anderson* concerned a post-trial competency determination where the prosecution's evidence had already been presented. At the pretrial stage of these cases, where the substance of the People's evidence remains to be presented, it would be premature to base a ruling on a determination that the prosecution's trial evidence will be primarily testimonial rather than physical, making more significant Defendant's purported amnesia as a hindrance to assisting counsel to prepare a defense. In *Anderson*, where the prosecution relied primarily on testimonial evidence, the court offered the following *dicta*: "Had the proof of Parson's commission of the crime been based on eyewitness testimony, or had the prosecution relied substantially on statements attributed to Parson, his amnesia *might* have significantly hindered the preparation and presentation of a rebuttal defense." *Anderson*, 481 F.2d at 96, emphasis added. *Anderson* does not represent controlling precedent to the effect that Defendant's assertion of amnesia represents an absolute bar to his competency to stand trial.

Courts across the United States have determined that "the defendant's amnesia, standing alone was not a proper basis for a finding that [he] was incompetent to stand trial." *United States v. Andrews*, 469 F.3d 1113, 1118-19 (7th Cir. 2006) (quoting *Leach v. Kolb*, 911 F.2d 1249, 1260-61 (7th Cir. 1990) (where the defendant argued that as a result of head trauma he suffered amnesia for the period of time during which the alleged crime occurred)). Rather than focusing on the claim of amnesia alone, courts should examine the ". . . additional circumstances under which incompetency could be proven." *Id.* at 1119 (*See, e.g., United States v. Villegas*, 899 F.2d 1324, 1341 (2d Cir. 1990) ("A defendant's amnesia about events surrounding the crime will not

111

automatically render him incompetent to stand trial."); *United States v. Rinchack*, 820 F.2d 1557, 1569 (11th Cir. 1987); *Davis v. Wyrick*, 766 F.2d 1197, 1202 (8th Cir. 1985); *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir. 1978)). "An amnesiac defendant, like any other defendant, must show that he is unable 'to satisfy the ordinary competency standard: that is, he must be able to consult with his lawyer with a reasonable degree of rational understanding and . . . [have] a rational as well as factual understanding of the proceeding against him.' " *Andrews*, 469 F.3d at 1119 (quoting *Rinchack*, 820 F.2d at 1569).

■ In applying the well-understood standard for determining an individual's competency to stand trial, the Court finds that Defendant is competent and capable of assisting his attorney with a reasonable degree of rational understanding.

First, the Court is not persuaded that Defendant has suffered from amnesic episodes when he has engaged in traumatic incidents such as the alleged criminal assaults on female victims giving rise to the charges in these cases. The timing of Defendant's eve of trial revelation of his childhood head trauma and resulting blackouts suggests the possibility of a strategic ploy to avoid prosecution. In fact, while Defendant faces his third and fourth prosecutions for rape, he has never previously raised the issue of his supposed lack of competence to stand trial. When questioned at the Hearing why he did not advise his attorney at his first rape trial "that you have these tunnel visions and about the dog knocking you over," Defendant responded: "Because lack of education, that's what it was back then. Now I know a little bit more about the law." Tr., p. 44:16-24.

Further, Defendant's testimony, unsupported by any medical or expert testimony, is inconsistent as to how and when he is affected by "tunnel vision" and memory loss. He testified as to his memory about the prior rape charge, later dismissed, stating "It never was no rape." Tr., p. 40:12. At the Hearing, Defendant could recall certain details about the incident at Sandy Point, confirming that he had sexual intercourse with a Caucasian woman and then "I take off." Tr., pp. 51:7-52:4.

According to Dr. Sang, Defendant's "Memory· was intact in that he could remember all of the incidents. He was a very bright man." Tr., p. 16:5-7. Neither Dr. Sang nor Dr. Mendez could find medical or psychological veracity in his claims. In fact, each testified at the Hearing, as is reflected in their respective reports, that Defendant passed every

competency test administered; that he is intelligent; and that he is competent to assist his attorney at trial. Tr., pp. 15:7-22; 22:7-23:10.

The sum total of the Hearing evidence is such that the Court cannot find that Defendant was so impaired during these two assaults with which he stands charged as to be wholly unable to assist his attorney in rebutting the People's evidence.

■ Second, even if Defendant does actually suffer from these blackouts it does not necessarily render him exempt from prosecution due to a lack of competency to stand trial. The Third Circuit has observed that "it does not follow that because a person is mentally ill [that the person] is not competent to stand trial." *Brown*, 2015 U.S. Dist. LEXIS 45664, at *45 (citing *Leggett*, 162 F.3d at 244; *see also United States v. Nichols*, 56 F.3d 403, 412 (2d Cir. 1995) ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial.")) Therefore, "if the mental illness does not deprive the defendant of the ability . . . to understand the proceedings . . . rationally as well as factually, then the illness is irrelevant for the purposes of determining competency." *Leggett*, 162 F.3d at 244. The same medical or mental condition may nonetheless be relevant in the determination of whether a defendant is legally capable of committing a crime, or committed the act charged in consequence of his mental illness. *See* 14 V.I.C. § 14(4).

The Court finds, based on Hearing evidence, including the testimony of the two experts in the fields of psychiatry and psychology, that Defendant is capable of assisting his attorney with a reasonable degree of rational understanding. He is intelligent, possessing a sufficient memory and understanding of the judicial system to work with his attorney in preparing his defense.

On the basis of the foregoing, it is hereby

ORDERED that the Defendant's Motion to Dismiss the Rape Cases Pending Against Him on the Grounds that He is Incompetent to Stand Trial is DENIED.